DREWERY *et al. v.* NELMS.*

(*Jackson.*   April Term, 1915.)

1. **ADVERSE POSSESSION.** Elements. Presumptions.

The adverse nature of possession must be shown by clear and
positive proof, and not by inference; every presumption being
in favor of a possession in subordination to the title of the
true owner.   (*Post, p.* 261.)

2. **TENANCY IN COMMON.** Hostile character of possession.  Pre-
sumptions.

In adverse possession, the possession of one tenant in common is
the possession of all, and his entry and holding will continue
as the possession of all, and to overturn this entirety of pos-
session, there must be some plain demonstration that he has
repudiated the rights of his cotenants.   (*Post, p.* 261.)

3. **TENANCY IN COMMON.** Adverse possession.  Hostile charac-
ter.

The ouster and exclusion of cotenants sufficient to establish
adverse possession may be effected by taking possession and
giving actual notice of a claim of sole ownership, or by other
positive and unequivocal acts which must, by their nature, put
the other cotenants on notice that they are excluded from
possession; mere silent, sole occupation by one of the entire
property though claiming the whole estate and appropriating
all the rents without notice to his cotenants being insufficient.
(*Post, p.* 262.)

4. **TENANCY IN COMMON.** Adverse possession.  Presumption of
grant.

A presumption of title may arise by an exclusive and uninter-
rupted possession by one tenant in common for twenty or more
years, claiming the same as his own, without any recognition
of his cotenants or claim upon their part, but such presumption
arises independent of the statute of limitations, and may be re-

*For cases passing upon the presumption of ouster of one tenant
in common from long continued, undisturbed possession of another,
see note in 10 L. R. A. (N. S.) 185.

Drewery v. Nelms.

butted by proof of disability on the part of the cotenants. (*Post*, *p.* 262.)

Cases cited and approved: Marr v. Gilliam, 41 Tenn., 488; Hubbard v. Wood, 33 Tenn., 279; McClung v. Ross, 5 Wheat., 116; McCorry v. King, 22 Tenn., 267; Brock v. Burchett, 32 Tenn., 27.

5. **TENANCY IN COMMON.** Adverse possession. Evidence.

In ejectment, wherein plaintiffs relied upon the adverse possession of their remote grantor, evidence that such grantor had continued to reside on the land after the death of his mother intestate; that he occupied free of rent except to keep up the improvements and pay the taxes; that he recognized that his holding was only for life, and only occasionally claimed that he owned the entire land—was not such clear and unequivocal proof as was necessarw to show a holding to the exclusion of the cotenants to their knowledge.    (*Post*, *p.* 263.)

6. **HUSBAND AND WIFE.** Adverse possession. Pleading coverture.

In ejectment, plaintiffs relied upon the presumption of a grant by lapse of time to their remote grantor, who had lived upon the premises, which were originally owned by his mother, for more than twenty years after her death. Defendant claimed under a deed from a sister of such grantor, purporting to cover her share as heir.of her mother. This sister was married when plaintiff's grantor entered into possession. *Held*, that her coverture could be shown in rebuttal of the presumption of a grant from the cotenants of plaintiff's grantor, although not pleaded in connection with the statute of limitations or otherwise. (*Post*, *p.* 263.)

Case cited and approved: Iron & Coal Co. v. Schwoon, 124 Tenn., 216.

Code cited and construed:    Sec. 4980 (S.).

---

FROM HARDEMAN.

---

Appeal from the Chancery Court of Hardeman County.—J. W. Ross, Chancellor.

J. A. FOSTER, for appellant.

A. J. COATS, for appellees.

MR. JUSTICE FANCHER delivered the opinion of the Court.

This suit is in the nature of ejectment filed by C. F. Drewery and N. P. Rich against D. S. Nelms, and is to recover 160 acres of land in Hardeman county and to enjoin a suit brought by defendant in the county court of Hardeman county for sale for partition of the land. The land was originally owned by Margaret Jones by purchase at a public sale in 1855 at the price of $100. Margaret Jones died in 1880. Prior to her death her son, J. B. Jones, lived on the land by her permission, and continued to reside upon the land for a number of years prior to his death which was in 1906.

The said Margaret Jones died intestate and left five children, namely, J. T. Jones, O. F. Jones, J. B. Jones, Tabitha Blankenship and Bettie Mhoon. Another child, Gus Gay, died without issue. J. B. Jones died intestate, and left W. P. Jones and Veona Jones his children and only heirs. C. F. Drewery purchased the interest of W. P. Jones, which is claimed to be a one-half interest in the land. N. P. Rich purchased the interest of Veona Jones, which is claimed to be a one-half interest in the land. Whether these two

Drewery v. Nelms.

children of J. B. Jones owned the entire title to the land, or only a one-fifth interest, depends on whether J. B. Jones held this land under such circumstances as barred the title of his brothers and sisters.

There is some slight proof that Margaret Jones placed her son, J. B., in possession of the land, intending to let him have it at her death, but the proof is not at all convincing on this proposition. One witness states that he heard Margaret Jones say that at her death the place was his (J. B. Jones) that the rest of the boys had left her. She lived on the land at that time, and had given J. B. permission to build on the land near her home. Her other children were gone to other States. However, she left the place before her death and died at the home of her daughter, Mrs. Bettie Mhoon, at Corinth, Mississippi. She made no deed to J. B. Jones, and this evidence is too slight within itself to exclude the title of the other heirs.

After the death of his mother, J. B. Jones continued to reside on the land, paid the taxes, which were assessed to him, cut some timber which he never accounted for, and paid no rents to his brothers and sisters, and when he moved off the place, one Monroe Richardson lived on the land by permission of J. B. Jones, but paid no rent except to keep the taxes paid. This holding by J. B. Jones and Richardson was a continuous possession for over twenty years. The land was poor, and part was cleared and part was in timber. As the land would become worn portions would be thrown out as worn-out old fields, and some new

132 Tenn.17

land was cleared and inclosed by J. B. Jones. The land brought but very little income.

In 1910, defendant Nelms bought the one-fifth interest in the land of Bettie Mhoon and took a deed from her and her husband.

The county court partition proceeding filed by Nelms was against the other heirs of Margaret Jones and purchasers from them and their descendants.

The chancellor sustained the bill, and permitted a recovery of the land, enjoining the county court proceeding. From this decree Nelms appealed.

Complainants' title to more than one-fifth interest depends on whether the possession of J. B. Jones was adverse to his cotenants.

Having no deed or other assurance of title, it is necessary to look to the proof to see whether the other heirs are barred, or whether a grant may be presumed from lapse of time and exclusive claim of right to the entire estate.

T. F. Wright proved the possession by J. B. Jones, and said J. B. claimed the land, but he admits he never heard him say anything about the ownership, and he proves no fact upon which he bases his general statement that J. B. made this claim.

C. F. Drewery, who bought from the son of J. B. Jones, said he supposes J. B. claimed to own it, but he proved no distinct fact on this point.

T. J. Dunn proved that he heard Margaret Jones say the place was J. B. Jones's at her death, as the

other children had all left her, and that he heard J. B. Jones say his farm was about worn out.

J. Y. Reed, a justice of the peace, proved that he assessed the taxes in the name of J. B. Jones.

Jim Russell said he contracted to buy the land from J. B. Jones about twenty-two years ago, and that J. B. claimed to own the land; that he heard nothing about a child's part. The wife refused to sign the deed, and the trade fell through.

B. P. Drewery, a brother of complainant C. F. Drewery, said he tried to buy the land from J. B. Jones, and that his wife, Harriet, locked herself up in the room and would not sign a deed, but he proved no distinct fact as to claim of ownership by J. B. Jones during his possession of the land.

W. B. Ragan said that J. B. Jones lived on the land and sold some timber, but he never heard him say whose it was.

W. P. Jones, the son of J. B. Jones, testified as to his father cultivating portions of the land and clearing other portions, but he said he never heard his father say whether he had a child's part or all of it. He said that his aunt Bettie Mhoon always claimed she owned an interest in the land, and that he tried to buy her interest.

N. P. Rich said that seventy or eighty acres of the land had been cleared first and last, and that it was mostly worn out, and the inclosures had been turned out and the land was not in cultivation when he bought from the daughter of J. B. Jones. He proved no fact

to· show that there was ever any adverse holding against the other tenants in common by J. B. Jones or his heirs.

Monroe Richardson said that J. B. Jones claimed to own a child's part and admitted that his sister, Bettie Mhoon, owned an interest, and told witness in 1904 or 1905 to buy her share if he wanted to; that witness wrote to Bettie Mhoon and she answered, proposing to sell, claiming an interest, and he filed her letter as evidence. He said he lived on the land by contract with J. B. Jones and paid the taxes in the name of J. B. Jones, but paid no other rents.

J. M. Pruner said he contracted with J. B. Jones to buy this land fifteen or sixteen years ago, but the trade was not consummated because he found J. B. had no deed and only owned one part. He said J. B. claimed to own his own interest and the interest of his brothers, Dock and Tom Jones, making three parts, and told witness that his sisters, Bettie and Tabitha, owned the other two interests.

D. S. Nelms, the defendant, testified that he purchased the interest of Bettie Mhoon, and filed his deed from her and her husband. He said that J. B. Jones told him several times that he only owned a child's part; that the understanding was that he was to stay on the land as long as he lived and kept the place up and paid the taxes. He said that he bought the share of Bettie Mhoon at the suggestion of W. P. Jones, who was to pay him for it in making ''ties,'' but did not do

so; that W. P. Jones told him his father only had a child's part.

Bettie Mhoon and W. R. Mhoon, her husband, testified that Mrs. Mhoon's mother did not give or sell the place to J. B. Jones; that J. B. lived on the place with the understanding with the other heirs that he was to pay the taxes and keep up the repairs for the use of the land; that this was talked among the heirs about 1877 or 1878; and that letters from time to time had passed between Mrs. Mhoon and her brother, J. B. Jones, recognizing this as the understanding and conceding her interest in the land, and that he never claimed to own more than a child's part.

The doctrine of adverse possession is to be taken strictly, and must be made out by clear and positive proof and not by inference, every presumption being in favor of a possession in subordination to the title of the true owner. The possession of one tenant in common, as a general proposition, is the possession of all. If one tenant in common enters upon the land it will be presumed that he enters for all, and his holding will continue as the possession of all, by construction, each having entire possession of the whole. To overturn this relationship or entirety of possession by all, there must be some plain demonstration that the party in actual possession has repudiated the right of his cotenants. There can be no adverse possession or disseisin by one tenant in common except by some act or conduct on his part which will produce an actual ouster of his cotenants.

This ouster by one tenant in common against his cotenant may occur, but it takes something more than an appropriation of the rents without an accounting. The mere silent, sole occupation by one of the entire property, though he be claiming the whole estate, and appropriating the whole rents, without an accounting to or claim by the others, without notice to his cotenant that his possession is adverse, and unaccompanied by some act which can amount to an exclusion and ouster of the cotenant, cannot be construed into an adverse possession. This ouster and exclusion may be effected by taking possession and affording actual notice of a claim of sole ownership or other positive and unequivocal act that must by its nature put the other cotenants upon notice that they are excluded from the possession. A presumption of title in such cases may also arise, upon the same ground that a grant from the State is presumed, by an exclusive and uninterrupted possession of the land by one tenant in common for twenty or more years, claiming the same as his own, without any recognition of his cotenants or claim upon their part.

This is an inference of fact which may be deduced from the whole proof on the subject. This presumption arises independent of the statute of limitations. It may be rebutted by the infancy or other disability of the parties, their actual relationship, or other facts showing the possession was not adverse but by the indulgence, permission, or as tenant of the owner. Disabilities may accumulate to rebut the presumption,

which is unlike the statute of limitations. *Marr* v. *Gilliam,* 1 Cold., 488; *Hubbard* v. *Wood,* 1 Sneed, 279; *McClung* v. *Ross,* 5 Wheat., 116, 5 L. Ed., 46; *McCorry* v. *King,* 3 Hump., 267, 39 Am. Dec., 165; *Brock* v. *Burchett,* 2 Swan, 27.

The testimony of these witnesses does not make out that clear and unmistakable proof necessary to show a holding by J. B. Jones to the exclusion of his cotenants of such character as will be held to presume that they knew he was claiming adversely to them. The testimony of Mrs. Mhoon and her husband is positive to the effect that J. B. Jones was permitted to use and occupy the land during his life free of rent, except to keep up the improvements and pay the taxes. The positive proof that he recognized this understanding in statements to other witnesses strengthens their testimony. The fact that his own son could not state that he claimed the entire title illustrates the weakness of the contention that his cotenants had notice of an adverse claim. The lapse of time and failure to account for rents are fully explained by positive testimony, and this overcomes any presumption of adverse holding. Take for granted that J. B. Jones did, at the times stated by the few witnesses on that question, offer to sell the property, and held out the idea that it was his own, such occasional claims on his part cannot give notice to the owners that he was repudiating his obligation and understanding with them, unless this was communicated to his cotenants.

And even if his possession was adverse, it cannot

affect the title of Mrs. Mhoon, a married woman. It was unnecessary to plead her coverture.

The defendant was not setting up a statute of limitations. The complainants were attempting to prove title under the statute. It was a question of presumption by lapse of time which might be rebutted by showing that Mrs. Mhoon was a married women, and this was a matter of proof arising under averments of title and denial thereof. So far as an issue is concerned as to an adverse possession which operates to transfer title it is unnecessary to plead the statute of limitations. *Iron & Coal Company* v. *Schwoon,* 124 Tenn., 216, 135 S. W., 785.

Our statute provides that in ejectment the defendant may plead that he is not guilty of withholding the premises claimed by the plaintiff, and upon such plea may avail himself of all legal defenses. Shannon's Code, sec. 4980.

If it is unnecessary to plead the statute of limitations on the effect of the statute to toll the title, arising in an ejectment suit, it follows necessarily that an exception to the statute need not be pleaded.

So, Mrs. Mhoon's title was not taken away from her even if the possession was adverse. The defendant holds under her by conveyance executed since the pos session relied on, and if she was not barred, neither was the defendant.

The result is that the chancellor was in error in granting the relief prayed for in the bill, and his decree is reversed and the injunction dissolved and the bill dimissed, at complainants' costs.