DELIA FERGUSON *v.* D. R. PRINCE.

DELIA FERGUSON *et al. v.* SAME.

(*Knoxville.*   September Term, 1916.)

1. **ESTOPPEL. Deed. Warranty. After-acquired property.**

Where the grantor in a general warranty deed was without title, upon his subsequent acquisition of title it immediately inured to the benefit of the grantee by virtue of the warranty. (*Post, pp.* 546-548.)

Cases cited and approved: Stuart v. Nelson, 5 Tenn., 200; Henderson v. Overton, 10 Tenn., 394; Robertson v. Gaines, 21 Tenn., 367; Gookin v. Graham, 24 Tenn., 480; Birdwell v. Cain, 41 Tenn., 301; Susong v. Williams, 48 Tenn., 625; Coal Creek Mining & Mfg. Co. v. Ross, 80 Tenn., 1; Woods v. Bonner 89 Tenn., 411; Bird v. Cross, 123 Tenn., 419.

2. **CHAMPERTY AND MAINTENANCE. Conveyance of pretended interest in lands. Statute. "Champertous."**

Under Shannon's Code, section 3174, providing that the provisions of section 3171, 3172, and 3175, making the conveyance of pretended interests in land champertous, shall not prevent an absolute and *bona-fide* sale of mortgage of lands not possessed and held adversely at the time of such sale or mortgage, a conveyance by one without title or possession is not champertous, unless the land was held adversely. (*Post, p.* 548.)

Cases cited and approved: Wilson & Wheler v. Nance & Collins, 30 Tenn., 191; Ruffin v. Johnson, 52 Tenn., 608.

3. **CHAMPERTY AND MAINTENANCE. Grant of land held adversely. Estoppel.**

Although land conveyed by warranty deed by one out of possession and without title was held adversely, the champerty statutes would not apply as between the parties; as the grantor would be estopped to deny the validity of the deed. (*Post, p.* 548.)

Ferguson v. Prince.

4. **ADVERSE POSSESSION.   Sufficiency of possession.**

A possession consisting of intermittent acts of having dirt thrown upon a lot from time to time to fill up holes and occasionally storing lumber and wagons thereon is not sufficient to support a claim of adverse possession.   (*Post, pp.* 548-553.)

Case cited and approved: Gernt v. Floyd, 131 Tenn., 119.

5. **BOUNDARIES.   Description.   Adjoining lands.**

Where a deed to land which was bounded by two streets meeting at an acute angle described the land as beginning at a point fifty feet east of an adjoining lot running fifty feet along the first side and running back in parallel lines to the second street, the description indicated that the lines were intended to run parallel with the adjoining lot which was at right angles to the second street.   (*Post, p.* 553.)

6. **DEEDS.   Construction.**

Where a grantor made two conveyances correctly describing the lots conveyed, but staked off the lot in the second conveyance so as to. include a portion of the first, the description must be confined to the language of the deeds, and, nothing else appearing, the successors in title and the grantee of the first lot may recover that portion of their lot staked off as belonging to the second.   (*Post, pp.* 553, 554.)

7. **ADVERSE POSSESSION.   Tacking possession.   Necessity of privity.**

Successive adverse possessions under the statute of limitations can not be tacked unless they are connected by contract or other form of legal privity, and each subsequent possession not so connected takes a new start unaided by the prior possession.   (*Post, pp.* 554-556.)

Acts cited and construed: Acts 1819, ch. 28.

Cases cited and approved: Erck v. Church, 87 Tenn., 575; Marr v. Gilliam, 41 Tenn., 491.

8. **ADVERSE POSSESSION.   Presumption of grant.   Successive possession.**

Under the doctrine of presumption of grant by continuous adverse possession of land for twenty years while successive possession

Ferguson v. Prince.

must be connected without any hiatus, there need be no privity of contract or other legal privity between the successive occupants.     (*Post, pp.* 556-558.)

Cases cited and approved: Marr v. Gilliam, 41 Tenn., 488; Scales v. Cockrill, 40 Tenn., 433; Mimms and Wife v. Ewing, 83 Tenn., 667; Ferrell v. Ferrell, 60 Tenn., 329; Saunders v. Simpson, 97 Tenn., 382; Dewey v. Nelms, 132 Tenn., 254; Gwathney v. Stump, 2 Tenn., 308; Hanes v. Peck's Lessee, 8 Tenn., 228; Gilchrist v. McGee, 17 Tenn., 455; McCorry v. King's Heirs, 22 Tenn., 267; Chilton v. Wilson's Heirs, 28 Tenn., 399; Lessee of Brock v. Burchett, 32 Tenn., 27; Collins v. Hipshire, 32 Tenn., 109, 111; Cannon v. Phillips, 34 Tenn., 211; White v. Lavender, 37 Tenn., 648; Williams v. Donnell, 39 Tenn., 695; Snoddy v. Kreutch, 40 Tenn., 301; Hunter v. Bills, 3 Shan. Cas., 97 ; Railroad v. Hays, 79 Tenn., 382; Dunn v. Eaton, 92 Tenn., 743.

9. LIMITATION OF ACTIONS. Disability. Infancy.

As it must appear that the parties against whom a presumption of grant to land is sought to be enforced were in a position to resist possession during the whole twenty years, where the possession of an adverse holder was less than twenty years when the owner died leaving minor children, one of the children still a minor is entitled to recover his interest in the property; the presumption not having completely run as to him because of his disability.    (*Post, pp.* 556-658.)

10. LIMITATION OF ACTIONS. Disability. Infancy.

As the three years' saving for infants prescribed by the statute of limitations has no bearing upon the presumption of title to land from lapse of time, where one was an infant at the time of inheriting land to which another claims title by adverse possession, only the time during which the disability existed will be counted out in determining the length of the adverse possession.    (*Post, pp.* 558, 559.)

11. TENANCY IN COMMON. Right to sue in ejectment. Decree.

Tenants in common may sue together in ejectment, and one may recover and be entitled to a decree, although the other be barred and fail to recover.    (*Post, pp.* 559, 560.)

136 Tenn.—35

Ferguson v. Prince.

Cases cited and approved: Barrow's Lessee v. Navee, 10 Tenn., 227; Wade v. Johnson, 24 Tenn., 119; Belote v. White, 39 Tenn., 703; Williams v. Mining & Mfg. Co., 115 Tenn., 578; Jones v. Phillips, 57 Tenn., 562; Turner v. Lumbrick, 19 Tenn., 7.

12. **EJECTMENT. Title to other action.**

A widow, not being the heir of the husband, cannot recover in ejectment. (*Post, pp.* 560, 561.)

## FROM KNOX.

Appeal from the Chancery Court of Knox County —WILL D. WRIGHT, Chancellor.

C. W. CANSLER and FRANK SANDERS, for appellants.

T. L. CARTY, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

These were two separate cases tried in the chancery court of Knox county, being ejectments for distinct lots of land in the city of Knoxville, but, the evidence being much the same in both, they were consolidated for purposes of hearing, and disposed of by the chancellor in one decree and appealed to this court under one transcript. The chancellor dismissed the bill in each case, and the complainants have appealed.

The bill in the first case sought to recover a part of lot No. 112 in McAnally's addition to Knoxville; the part sued for being accurately described in the record.

The determinative facts with respect to this piece of property are that on the 13th day of July, 1905,

the complainant, then without title, conveyed the property in question by a deed containing a general warranty of title to the defendant, D. R. Prince, but subsequently, on the 30th day of November, 1906, she acquired the title by deed from the owners, Robert L. Lilley and wife, Lottie. Upon the acquisition of this title it immediately inured to the benefit of and passed into the defendant, Prince, by virtue of the warranty. This rule of law was derived by our jurisprudence from the English law, and has long been a settled principle in this State. Its application, together with different formulations of it, will be found in the following cases in our State: *Stuart* v. *Nelson,* 4 Hayw. (5 Tenn.), 200; *Henderson* v. *Overton,* 2 Yerg. (10 Tenn.), 394, 396, 24 Am. Dec., 492; *Robertson* v. *Gaines,* 2 Humph. (21 Tenn.), 367, 383; *Gookin* v. *Graham,* 5 Humph. (24 Tenn.), 480, 483, 484; *Birdwell* v. *Cain,* 1 Cold. (41 Tenn.), 301, 302; *Susong* v. *Williams,* 1 Heisk. (48 Tenn.), 625, 630; *Coal Creek Mining & Manufacturing Co.* v. *Ross,* 12 Lea (80 Tenn.), 1 and 4; *Woods* v. *Bonner,* 89 Tenn., 411, 421, 422, 18 S. W., 67; *Bird* v. *Cross,* 15 Cates (123 Tenn.), 419, 422, 131 S. W., 974.

It is insisted that, since the complainant was out of possession at the time she made the conveyance to the defendant, it is therefore void, under our champerty laws. Shannon's Code, secs. 3171, 3172, 3175. But section 3174 provides that:

"These provisions shall not prevent an absolute and *bona-fide* sale or mortgage of lands or tenements

not possessed and held adversely at the time of such sale or mortgage,'' etc.

The evidence fails to show that there was any adverse possession at the time. So the champerty provisions do not apply. Still, if there had been such adverse possession, they would not apply between the complainant and the defendant, because the deed would be good between them; she being estopped to deny its validity. *Wilson & Wheeler* v. *Nance & Collins,* 11 Humph. (30 Tenn.), 191, 192, *Ruffin* v. *Johnson,* 5 Heisk. (52 Tenn.), 608, 611.

The defendant also insists that he had been in adverse possession of this lot for more than seven years next before the bill was filed, claiming under his deed from the complainant. But the evidence fails to sustain this defense; his supposed possession consisting simply of having dirt thrown upon the lot from time to time to fill up holes, and also of occasionally storing lumber and wagons thereon. Such intermittent acts are not sufficient. *Gernt* v. *Floyd,* 131 Tenn., 119, 174 S. W., 267. However, on the first point stated, the decree of the chancellor must be affirmed.

The second bill was filed by the heirs at law of Charles F. Ferguson, and by his widow, the complainant Delia, against the same defendant, on the 12th of March, 1914. The heirs suing are Frances Rebecca, born March 12, 1890, and therefore twenty-four years old to a day, when suit was brought, and Richard Lawson Ferguson, born May 28, 1894, who

was therefore just a little over nineteen years old. These dates are important in view of the defense of the statute of limitations of seven years' adverse possession, and also the defense of twenty years' adverse possession, from which a deed or grant may be presumed. It is also proper to be stated here that Charles F. Ferguson, the father of these children and the husband of the complainant Delia, died April 28, 1901. The widow joins in the bill as next friend of the minor complainant, and also as asserting her right to dower.

In order to properly understand the facts it will be necessary to refer to a map which we find in the record and attach to this opinion showing McAnally's addition and the lot in controversy in connection with other lots adjoining.

On turning to this map it is perceived that lots Nos. 115, 114, and 113 are rectangles, that three sides of No. 112 are bounded by right lines, but that the northern line is broken by the margin of Asylum avenue running at an acute angle. The east and west lines of lot No. 112 are, it is perceived, linked lines rather than solid lines. The eastern boundary of lot No. 111 does not appear upon the map. The space marked on lot No. 112, "Property of D. R. Prince," is the part of lot No. 112 which was sold by .Delia Ferguson to the defendant, Prince, and is the property involved in the previous case just disposed of. It is perceived that immediately east of that is a part of lot No. 112 marked, "Property of Delia Ferguson," and immediately east of that is a part of lot No. 111. It is perceived that the line marked "89.6" has along its length the word "fence," and also the line west of Delia Ferguson's marked "120.40" also has attached to it the word "fence." Both lots Nos. 111 and 112 were formerly owned by Patrick Cain. On June 28, 1878, he sold a strip fifty feet wide off the west side of lot No. 111 to Fannie Branner, and the latter, on May 22, 1891, sold this fifty feet to Charles F. Ferguson. On October 26, 1878, Patrick Cain sold to Harriet C. Branch the next fifty feet of lot No. 111 lying immediately east of and adjoining that previously sold to Fannie Branner. Harriet Branch sold this to E. C. Camp. E. C. Camp on December 31, 1881, sold this lot to Rachel Connor and Harriet Branch. The latter sold a half

interest back to E. C. Camp on January 10, 1889. E. C. Camp on June 1, 1901, sold this half interest to defendant, D. R. Prince. On December 8, 1903, Rachel Connor conveyed to D. R. Prince the other half of this lot.

Rachel Connor built a house and inclosed what she thought was her lot in the latter part of 1881, but instead of running her lines perpendicular to Asylum avenue, and also to University avenue, these lines were inclined so as to cause the front of the lot to face with the angle of Asylum avenue, resulting in the laying of a part of her lot over on the Ferguson lot. When Ferguson came to build, supposing the fence marked with the figures "89.6" represented the eastern line of his fifty feet, he laid down his lot at the same angle, which resulted in putting about half of it over on lot No 112, which belonged to a party named Lilley, the lot at that time vacant. In course of time Lilley discovered the invasion, and compelled Ferguson, or rather his widow, to buy the whole of lot No. 112, a part of which she subsequently sold to the defendant, as we have stated, and as shown in the previous case.

So the Fergusons bring the present suit to recover so much of the first fifty feet of lot No. 111 belonging to them as is now held by the defendant, Prince, under the fence made by Rachel Connor; that is to say, to rectify the lines. The defendant pleaded the statute of limitations of seven years, claiming adverse possession for that length of time,

and also twenty years' adverse possession, as a basis
for the presumption of a grant. He likewise defends
on the ground that the true method of laying off the
lots, in the diagonal manner was adopted by Rachel
Connor, and subsequently followed by Ferguson.
This defense is based, apparently, on two grounds:
First, that it is the natural way; secondly, that Patrick
Cain himself staked off on the ground the fifty feet to
Harriet Branch. It was not the natural way, as will
be perceived from the language of the deed to Har-
riet Branch. The description in that deed is:

"A part of lot No. 111 of McAnally's addition to
Knoxville, Tenn., beginning at a point fifty feet east
of lot No. 112 and running fifty feet towards Knox-
ville along the pike and running back in parallel lines
to University avenue."

The subsequent deeds on down to Prince used sub-
stantially the same language either directly or by re-
ference to prior deeds. The language of the deed to
Ferguson for the first fifty feet of lot No. 111 is:

"Fifty feet front of lot No. 111 in McAnally's ad-
dition to Knoxville, Tenn., being the western portion
of said lot and adjoining lot No. 112 and running
back to University avenue, the said front of said lot
being on the Montgomery pike [now Asylum avenue],
and being the same lot that was conveyed to the said
first party [Fannie Branner] by deed from Patrick
Cain," etc.

The description in the deed from Patrick Cain to
Fannie Branner was:

Ferguson v. Prince.

"A part of lot No. 111 of McAnally's addition to Knoxville, the west corner of said lot adjoining Martha Lilley [meaning lot No. 112], fronting fifty feet on Montgomery pike[now Asylum avenue] and running back to University avenue."

We think it is clear from these descriptions that the lines were intended to run parallel with the east boundary line of No. 112 and at right angles with University avenue.

As to the contention that the fifty-foot lot conveyed by Patrick Cain to Harriet Branch was staked off on the ground by him, this cannot avail in so far as such act of his caused that lot to impinge upon the lot previously conveyed to Fannie Branner; the conveyance to Fannie Branner having been made on June 27, 1878, and that to Harriet Branch having been made on October 26, 1878. After having already conveyed to Fannie Branner the first fifty feet lying on the western side of lot No. 111, he could not lawfully lay down upon that lot subsequently any part of the fifty feet intended to be conveyed to Harriet Branch; so the descriptions must be confirmed to the language of the deeds and the rectangular strips of land.

The scale on the map is forty feet to one inch.[1] Applying this scale to the map, the following results are obtained:

From the intersection of University avenue and Asylum avenue a straight line westward to Tellico

[1]The scale here used is eighty feet to the inch.—Reporter.

street extends the length of 328.1 feet. Lots Nos.
115, 114, 113, and 112 are each fifty feet wide, or a
total distance of two hundred feet from Tellico street
eastward to the east line of lot No. 112. That leaves
the distance from the east line of lot No. 112 to the
intersection of Asylum avenue and University ave-
nue exactly 128.1; so that the Fergusons would be en-
titled to the first fifty feet of lot No. 111 measuring
from the southeast corner of lot No. 112 eastward.
The next fifty feet directly east of that would be the
property · which was conveyed by Patrick Cain to
Harriet Branch, and subsequently, through a series
of conveyances, passed to the defendant, Prince.

Nothing Else appearing, the complainants are en-
titled to recover the first fifty feet of lot No. 111, or
so much of it as they are not already in possession
of.

We shall now consider the defense of the statute
of limitations interposed by the defendant.

Rachel Connor and Harriet Branch, her grand-
daughter, received a conveyance of the lot in question
on December 31, 1881. The evidence is that during
that year the fence was put around the lot; that is,
not the lot actually described in the deed, which we
have held intended right lines, but the fence ran in
the diagonal manner we have previously stated,
throwing a part of the lot over on the first fifty feet
of lot No. 111, which had been conveyed to Frances
Branner, under whom the complainants claim. The
ground fenced up in this erroneous manner was · held

in possession by Rachel Connor until her conveyance to defendant Prince of December 8, 1903—that is to say, for twenty-two years. But in the conveyance which Rachel Connor made to defendant Prince she did not describe her actual possession, but the fifty feet described in the deed which she and Harriet Branch had received from Camp, that is, by lines parallel with the east line of lot No. 112. The same is true of the conveyance by E. C. Camp to defendant Prince on June 1, 1901, of the other half interest in the same lot. So it is that Prince's claim to the lot as actually fenced rests simply upon the fact that he succeeded Rachel Connor in the possession, without any privity of contract between them as to the ground covered by the fence, except in so far as her deed covered part of the land fenced; that part lying upon Ferguson's lot to the west not being covered by the deed. This being true, the defendant could take no advantage of the previous possession by Rachel Connor, or by the latter and Harriet Branch, since their possessions were not united to his any form of legal privity, that is by a contract, or descent, or the like. Therefore, under the rule as laid down in *Erck* v. *Church,* 3 Pick. (87 Tenn.), 575, 11 South., 794, 4 L. R. A., 641, defendant's possession was entirely new when he entered on vacation of the premises by Rachel Connor. The doctrine of *Erck* v. *Church,* drawn really from *Marr* v. *Gilliam,* 1 Cold. (41 Tenn.), 491 is in effect, that successive possessions under the second section of the Act of 1819 (chapter 28) cannot aid each other un-

less they be connected by contract or other form of legal privity, and that, each subsequent possession not so connected takes a new start or beginning, unaided by the prior possession. It results that the defendant obtained no right under the statute of limitations, and is not protected thereby.

We shall next consider whether he is protected by the presumption of a grant. The doctrine on which this presumption rests is that, where one has remained in uninterrupted and continuous possession of land for twenty years, a grant or deed will be presumed. The reasons underlying the rule are variously stated. Sometimes it is said that such long possession furnishes an inference of fact that such muniment of title actually existed, which in course of time had been lost or in some manner unintentionally destroyed. Other cases in effect hold that the presumption is a flat presumption of law intended for the repose of society. But, whichever be the true theory, the presumption undoubtedly exists. It has some special qualities which we shall now state. The possession may be continuously in one person, or there may be several successive possessions. In the case of successive possessions they must be connected without any *hiatus,* but there need be no privity of contract or other legal privity between the successive occupants, in this matter radically differing from successive possessions used in making out a defense under the statute of limitations. This point is fully brought out with the dis-

Ferguson v. Prince.

tinction just indicated in the case of *Marr* v. *Gilliam,* 1 Cold. (41 Tenn.), 488, 501, 502, 511, 512. The absence of any necessity for privity between the successive holders of the property is also brought out very fully in *Scales* v. *Cockrill,* 3 Head (40 Tenn.), 433, and *Mimms & Wife* v. *Ewing,* 15 Lea (83 Tenn.), 667. An earlier case (*Chilton* v. *Wilson's Heirs,* infra) held that it was necessary to have privity, but, of course, the later cases control. It must also appear that the parties against whom the presumption is sought to be enforced were, during the whole twenty years, in a position to resist the possession, that is, where not under disability. *Marr* v. *Gilliam,* supra; *Ferrell* v. *Ferrell,* 1 Baxt. (60 Tenn.), 329; *Saunders* v. *Simpson,* 97 Tenn., 382, 37 S. W., 195; *Drewery* v. *Nelms,* 132 Tenn., 254, 262, 263, 177 S. W., 946.

Other aspects of the doctrine not necessary to be specially noticed in this opinion may be found in the remaining cases which appear in our Reports, viz.: *Gwathney* v. *Stump,* 2 Overt. (2 Tenn.), 308, 312-314; *Hanes* v. *Peck's Lessee,* Mart. & Y. (8 Tenn.), 228; *Gilchrist* v. *McGee,* 9 Yerg. (17 Tenn.), 455, 457; *McCorry* v. *King's Heirs,* 3 Humph. (22 Tenn.), 267, 276, 277, 35 Am. Dec., 165; *Chilton* v. *Wilson's Heirs,* 9 Humph. (28 Tenn.), 399, 405; *Lessee of Brock* v. *Burchett,* 2 Swan (32 Tenn.), 27, 31; *Collins* v. *Hipshire,* 2 Swan (32 Tenn.), 109, 111; *Cannon* v. *Phillips,* 2 Sneed (34 Tenn.), 211; *White* v. *Lavender,* 5 Sneed (37 Tenn.), 648; *Williams* v.

*Donnell,* 2 Head (39 Tenn.), 695; *Snoddy* v. *Kreutch,* 3 Head (40 Tenn.), 301; *Hunter* v. *Bills,* 3 Shan. Cas., 97, 101; *Railroad* v. *Hays,* 11 Lea (79 Tenn.), 382, 386, 47 Am. Rep., 291; *Dunn* v. *Eaton,* 92 Tenn., 743, 753, 754, 23 S. W., 163.

Recurring now to some of the dates previously stated, Rachel Connor was continuously in possession of the lot which she had fenced up from December 31, 1881, until December 8, 1903, when she conveyed to defendant Prince, which was just twenty-three days less than twenty-two years. During a part of that time, that is, up to May 22, 1891, the lot now claimed by complainant was owned by Fannie Branch, a single woman. This would cover nine years, four months, and twenty-one days, that is, from December 3, 1881, to May 22, 1891, on which latter date Charles F. Ferguson became the owner of the lot now sued for. He lived until April 28, 1901, a period of nine years, eleven months, and six days, making nineteen years, three months, and twenty-seven days from the date when Rachel Connor fenced up the lot. But he left two minor children, one of whom, Richard Lawson Ferguson, is still a minor; therefore as to him the twenty years' presumption has not completely run. And he, as heir of his father, is entitled to recover of the defendant an undivided half interest (there being two children) of the property sued for. The other heir, Frances Rebecca Ferguson, having been born March 12, 1890, was eleven years, one month, and sixteen days old

when her father died, and remained a minor nine years, ten months, and fourteen days. But the adverse possession began December 31, 1881, and the bill was not filed until the 12th day of March, 1914, a period of thirty-two years, twelve months, and eleven days. Deducting from this time the minority of Frances Rebecca, there is left twenty-two years, three months, and twenty-seven days during which the time was running wherein persons *sui juris* might have sued. So Frances Rebecca can recover nothing; the full presumptive period being made out. It is insisted in her behalf that she has the three years' saving for infants prescribed by our statutes of limitation, but this is a mistaken view. That provision has no bearing upon the presumption of title from lapse of time. All that is allowed under the cases we have cited is the counting out of the time during which any disability existed.

There is no difficulty in granting a decree to complainant Richard Lawson Ferguson and denying Frances Rebecca Ferguson's right of recovery, since in this State tenants in common may sue together in ejectment and one may be barred and fail of recovery, and the other may not be barred and may recover, and a decree will be entered accordingly. *Barrow's Lessee* v. *Navee*, 2 Yerg. (10 Tenn.), 227; *Wade* v. *Johnson*, 5 Humph. (24 Tenn.), 119, 42 Am. Dec., 422; *Belote* v. *White*, 2 Head (39 Tenn.), 703, 712; *Williams* v. *Mining & Manufacturing Co.*, 115 Tenn., 578, 93 S. W., 572, 6 L. R. A. (N. S.), 710,

112 Am. St. Rep., 878, 5 Ann. Cas., 822.  And see
*Jones* v. *Phillips,* 10 Heisk. (57 Tenn.), 562, 563, and
*Turner* v. *Lumbrick,* Meigs (19 Tenn.), 7, 11.

The widow is, of course, not an heir of the hus-
band, and cannot recover in ejectment.  It does not
appear that her dower had ever been assigned; so
her only proper *status* is that of next friend of the
minor complainant, Richard Lawson Ferguson.

The result is a decree will be entered in the sec-
ond case dismissing the bill as to complainant Delia
in so far as she sues in her personal capacity, and as
to the complainant Frances Rebecca.  A decree will
be entered in favor of the complaint Richard Lawson
Ferguson for an undivided half interest in the first
fifty feet of lot No. 111, lying immediately east of
the eastern boundary line of lot No. 112, treating the
east line of that lot as being parallel with the east
boundary of lot No. 112, and distant fifty feet from
that boundary line, and running in a perpendicular
line from University avenue northward to Asylum
avenue.

As to the costs, inasmuch as the two cases were
tried together, and the evidence taken for one used
in both, the assessment will have to be made as if
both cases were in one bill.  The complainants hav-
ing completely failed in the first case, and having
failed as to half of the second case, a fair division
of the costs would be to charge the complainants
Delia and Frances Rebecca with two-thirds of the
costs and the defendant Prince, with one-third of
all the costs.

Ferguson v. Prince.

ON REHEARING.

After a further consideration of the calls in the deed made by Patrick Cain to Fannie Branner and those in the deed made by the latter to Ferguson, we are of opinion that in ascertaining the part of lot No. 111 to be recovered by the minor complainant the measurement should begin at the northeast corner of lot No. 112, and extend thence fifty feet southeastwardly along the margin of Asylum avenue; thence due south to University avenue; thence west to the southeast corner of lot No. 112; thence north to the beginning. This makes a slight difference in quantity in favor of defendant, due to the inclination of the line bounding Asylum avenue.