# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**August 2, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

BETTY NESMITH and )
CECIL NESMITH, )
)
    Plaintiffs/Appellees, )
) Appeal No.
) 01-A-01-9809-CH-00509
VS. )
) Rutherford Chancery
) No. 96-CV-404
JOHN ALSUP, II and )
TERESA ALSUP, )
)
    Defendants/Appellants. )

APPEALED FROM THE CHANCERY COURT OF RUTHERFORD COUNTY
AT MURFREESBORO, TENNESSEE

THE HONORABLE ROBERT E. CORLEW, III, CHANCELLOR

DARRELL L. SCARLETT
16 Public Square North
P. O. Box 884
Murfreesboro, Tennessee 37133-0884
    Attorney for Plaintiffs/Appellees

FREDERICK L. CONRAD, JR.
607 Market Street, Ninth Floor
P. O. Box 2466
Knoxville, Tennessee 37902
    Attorney for Defendants/Appellants

AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
COTTRELL, J.

# O P I N I O N

The plaintiff petitioned the court for a declaration that she was entitled to a one-half interest in a farm that had been part of her father's estate. Her brother responded by claiming to be the sole owner under the provisions of their father's will, or in the alternative, under a theory of adverse possession. The trial court found that the effect of the will was to divide the property equally between the siblings, and that the brother failed to prove ownership by adverse possession. We affirm the trial court.

## I.

John Alvis Alsup executed his Last Will and Testament on April 20, 1957. Item II of the will devised his 76 acre farm to his wife, Blanche Harrell Alsup, as trustee for the maintenance, support and education of his minor son, John Alvis Alsup II (hereinafter referred to as John Alsup). The trustee was given the right to sell the farm, if necessary, to accomplish the purposes of the trust. Upon the completion or termination of the son's education, the residue of the trust was to be divided equally between the testator's wife, his son, and his adult daughter, Betty Mavity (now Betty NeSmith).

The testator died on May 3, 1957. John Alsup was ten or eleven years old at the time. In 1968, he completed his education by graduating from Middle Tennessee State University. As it turned out, his mother did not have to sell the farm to finance his education. Mr. Alsup worked nights to pay his college expenses, and attended classes during the day, and his mother supplemented his earnings by giving him money from time to time.

While John Alsup was still attending MTSU, his mother retired from teaching in the State of Tennessee, and moved to Dalton, Georgia, where her daughter, Betty NeSmith was living. Thereafter, John Alsup took control of the farm. He rented it out, collected the rents, and paid all the property taxes. He dealt with local officials, and at one point he executed a warranty deed transferring 3/10 of an acre to the City of Murfreesboro for an easement and right-of-way to change the roadbed on Sulphur Springs Road. He also met with potential purchasers of the property, including the school board, which was exploring the possibility of building a high school on the land, and with a team of Texas developers who presented him with a plan entitled "Alsup Farms -- a planned 76 acre Residential Sub-Division."

Blanche Harrell Alsup died on November 20, 1994, when she was over 90 years of age. Article IV of her will devised all her real property and all her personal property (except for two bequests not relevant here) "to my two children, Betty Alsup Mavity NeSmith and John A. Alsup II, in fee simple, share and share alike."

On March 27, 1996, Betty NeSmith filed a petition asking the court to declare that upon the death of her mother, she had become the owner of an undivided one-half interest in the farm property. She also asked the court to order that it be partitioned in kind. John Alsup filed a response and counter-petition on June 4, 1996, in which he contended that by virtue of his father's will, the farm was his sole property.

Ms. NeSmith subsequently filed a motion for partial summary judgment. In his response, John Alsup asserted that even if the court upheld the plaintiff's interpretation of the will, his long stewardship of the land made him its owner by adverse possession. The trial court granted the plaintiff's motion for partial summary judgment. The court found that Article II of the will of John Alvis Alsup had created a tenancy in common between Blanche Harrell Alsup, Betty NeSmith and John Alsup, and that John Alsup and Betty NeSmith now owned an undivided one-half interest in

the property.  John Alsup was permitted to develop proof on his claim of adverse possession.

Following another hearing, the court dismissed the claim of adverse possession and ordered partition in kind of the real estate, with the appointment of a jury of view to determine the division.  After the jury of view divided the property into two parcels, both parties requested possession of parcel #1.  To resolve this problem, the court ordered the Clerk and Master to conduct an auction by telephone between the parties, with the highest bidder to pay the amount of his or her last bid to the other, for the privilege of receiving the coveted parcel. The auction was conducted on July 13, 1998.  Ms. NeSmith made the winning bid of $50,000 and title to parcel #1 was vested in her.  This appeal followed.

Mr. Alsup asserts four arguments on appeal to support his position that the trial court erred in partitioning the property.  These arguments deal respectively with the interpretation of the will, Mr. Alsup's claim of adverse possession, and a claim of title by prescription (which was not argued in the trial court).  He also argues that the Clerk and Master terminated the auction too soon, and that his rights were prejudiced thereby.  We will discuss each of these arguments in turn.

## II.  The Will

Article II of the Last Will and Testament of John Alvis Alsup reads in its entirety:

> I give and devise to my wife, Blanche Harrell Alsup, as trustee for my minor son, John Alvis Alsup II, my farm located in the 9th Civil District of Rutherford County, Tennessee, fronting on the Sulphur Springs Road about 3½ miles North west of Murfreesboro, Tennessee, and containing about 76 acres.  The terms and conditions of this trust are that this farm be held, managed, rented or sold by said Trustee or her successor, if any, for the maintenance, support and education of my said son, John Alvis Alsup II as herein provided.  Said trustee is expressly authorized and directed

- 4 -

to hold or dispose of said farm according to her sole judgment and discretion with the view of accomplishing the purposes expressly herein; also, my trustee is authorized to reinvest the proceeds of sale from said farm if it should be sold, as she sees fit, subject to the provisions hereof as to the use of proceeds/ a limit or maximum of Fifteen thousand dollars is hereby fixed as the cost or expense of my said son's maintenance support and education and this shall also include necessary living expenses of my wife.  At such time as my said son's education shall be completed, terminated by circumstances beyond my Trustees control, the residue of said trust fund shall be divided equally between my said son, my daughter Mrs. Betty Alsup Mavity (now of Hartford Conn.), and my wife, Blanche Harrell Alsup, if living; if not, then her share shall go to my said two children, share and share alike.

John Alsup argues that since the first part of Article II placed the land in trust for his benefit, he was therefore entitled to receive the corpus of the trust upon its termination.  He tries to explain away the provision for the division of the land after the completion of his education by giving it a conditional meaning which we believe is not supported by the text.  He argues that the testator intended the residue of the trust to be subject to division only if the land was sold prior to the completion of his education.

The cardinal rule to follow in construing a will is to ascertain and give effect to the intention of the testator.  *Ashley v. Volz*, 404 S.W.2d 239, 242 (Tenn. 1966); *Martin v. Taylor*, 521 S.W.2d 581, 584 (Tenn. 1975).  To determine that intention, the court will look to the instrument as a whole for guidance, gathering the intention from the tenor and scope of the whole, and not from isolated parts. *Patterson v. Alexander*, 509 S.W.2d 834, 835 (Tenn. 1974).  Since every will is *sui generis*, the use of other cases involving the intentions of testators will be of little assistance. *Presley v. Hanks*, 782 S.W.2d 482, 487 (Tenn. App. 1989).

In the document before us, the testator clearly stated his intention that his property be used for the maintenance, support and education of his minor son. He set a definite limitation upon the duration of the trust created for that purpose,

stating that it would end "At such time as my said son's education shall be completed, terminated by circumstances beyond my Trustees control," and he gave clear instructions for the division of the property after the termination of the trust.

The appellant argues that every part of Article II which follows the expression "if it should be sold" is modified by that expression, including the provision for the division of the residue of the trust. We believe, however, that the quoted expression refers only to the provisions found in the same sentence, which involve reinvestment of the proceeds and the limitation on the amount that could be used for John Alsup's education. We acknowledge that the use of the term "the residue of said trust funds" rather than "the residue of said trust" in the following sentence lends some support to Mr. Alsup's theory. However, the dominant and controlling intention of the testator must govern, even if it is in conflict with some word, phrase, or expression which might lead to a different conclusion. *Davis v. Mitchell*, 178 S.W.2d 889, 912 (Tenn. 1943).

Mr. Alsup argues that his father had a sentimental attachment to the land, and that he intended to pass the family farm on to his son. He claims that his father knew that he was the only one likely to keep it intact as a working farm, rather than selling it off for residential or other purposes. But we note that the will itself contains no language supporting these assertions. The testator nowhere states that he intended or hoped that his son would eventually become the sole owner of the property, to the exclusion of his wife and his daughter, or that he in any way intended to favor his son over his other heirs, once the son's education was completed. In our opinion, if the testator had intended such a result, he would not have expressed it as obliquely as the defendant's theory requires, but as clearly as he expressed his intention to adequately fund his son's education. We therefore find that the trial court did not err in granting the plaintiff summary judgment on the will.

### III. Adverse Possession

To prevail on a claim of adverse possession, the plaintiff must make out his claim by clear and positive proof, with every presumption in favor of possession in subordination to the title of the true owner. *Harrison v. Beaty*, 127 S.W.2d 946 (Tenn. 1939). A party intending to claim property by adverse possession must remain in possession of the property for seven years under a claim of right. His possession must also meet all the following requirements: it must be open, actual, continuous, exclusive, adverse and notorious. *Catlett v. Whaley*, 731 S.W.2d 544, 546 (Tenn. App. 1987). *Also see* 3 Am.Jur.2d *Adverse Possession.*

The requirements that the possession be both exclusive and adverse are particularly difficult to establish when a cotenancy is involved. Every cotenant retains the right to enter into and occupy the common property, so the occupation of the property by one cotenant is not generally regarded as adverse to the claim of another. Nor is it generally considered to be exclusive, since possession by one is regarded as possession by all, unless there is an actual ouster of one tenant by another. *Moore v. Cole*, 289 S.W.2d 695 (Tenn. 1956).

An ouster does not necessarily mean a physical expulsion of one party by another, but it requires the party claiming adversely to perform some act that makes it clear to his cotenant that she is being excluded from ownership. In the case of *Drewery v. Nelms*, 132 Tenn. 254, 177 S.W. 946 (1915), our Supreme Court explained the ouster requirement this way:

> "This ouster by one tenant in common against his cotenant may occur, but it takes something more than an appropriation of the rents without an accounting. The mere silent, sole occupation by one of the entire property, though he be claiming the whole estate, and appropriating the whole rents, without an accounting to or claim by the others, without notice of his cotenant that his possession is adverse, and unaccompanied by some act which can amount to an exclusion and ouster of the cotenant, cannot be construed

into an adverse possession. This ouster and exclusion may be effected by taking possession and affording actual notice of a claim of sole ownership or other positive and unequivocal act that must by its nature put the other cotenants upon notice that they are excluded from the possession."

132 Tenn. at 262, 177 S.W. at 948.

This much is undisputed: that Mr. Alsup managed the property for well over 20 years; that he did not live on the land (in fact he never lived on the land); that he leased the farm out (one tenant, Thomas Becton, rented the land from him for 22 years); that he collected the rents and paid the taxes, without offering an accounting to his mother or to his sister; that he negotiated with the City of Murfreesboro for an easement to straighten a road; and that he represented himself as the sole owner when he spoke to developers eager to buy the property.

Some facts were in dispute, or were at least uncertain. For example, Ms. NeSmith states that she asked her brother for an accounting several times (which he denied). She testified on direct that he offered to buy her share of the land for $100,000; he was not asked on rebuttal whether he had made such an offer. Mr. Alsup testified that his sister asked him if she could attend the meeting with the prospective developers of Alsup Farms; she testified that he invited her without being asked. It is undisputed that she did not object to the fact that the documents submitted by the developers all referred to him as the owner, and did not mention her.

However, even if we resolved all the factual questions in such a way as to be most favorable to Mr. Alsup's theory, we still do not believe they would be sufficient to establish an ouster under the standard enunciated in *Nelms v. Drewery*, supra. Even though Mr. Becton, local officials, and prospective purchasers may all have believed that Mr. Alsup was the sole owner of the property (and there is some evidence to the contrary in regard to all three) there is no evidence that he ever

performed the sort of unequivocal act to put his sister on sufficient notice that she was being excluded, so that he could prevail on a theory of adverse possession.

## IV. Title by Prescription

As we mentioned above, the appellant did not raise the issue of title by prescription at trial. The jurisdiction of the Court of Appeals is appellate only. Tenn. Code Ann. § 16-4-108. Thus, we may not decide questions that were not brought up in the court below. However, we believe that even if it were appropriate for us to consider that issue, on the basis of the evidence in the record, we would have to find that the appellant has failed to establish one of the necessary elements for prescriptive title.

These elements are (1) the prescriptive holder has been in exclusive and uninterrupted possession of the land in question for more than 20 years, claiming the same as his own without any accounting to his co-tenants or claim on their part -- they being under no disability to assert their rights; and (2) the holder's occupancy of the property in question was without the actual or implied permission of the other co-tenants. See *Livesay v. Keaton*, 611 S.W.2d 581, 583 (Tenn. App. 1980). If either of these elements is not proven, the doctrine of title by prescription does not apply.

In the present case, Ms. NeSmith testified that she believed her brother to be looking after the land on behalf of her mother, and that she was content to let him do so. She herself was involved in looking after her mother's other needs during her declining years, and apparently regarded her brother's efforts as part of a division of labor naturally arising from practical necessity. Under these circumstances, it would be hard not to conclude that Mr. Alsup had at least the implied permission of both his sister and his mother to occupy the land in the manner in which he did.

## V.  The Auction

The appellant argues that there was error in the handling of the telephone auction, but does not state in what respect the Clerk and Master erred. Summaries of the auction are set out in the Clerk and Master's report, and in the appellant's objection to that report, which differ only in regard to their accounts of the degree of assent Mr. Alsup's attorney gave to the change in the ground rules and to the closing of the auction.

The original ground rules allowed each party thirty minutes to respond to the opposing party's bid.  Ms. NeSmith's attorney opened with a bid for $5,000 at 9:55 a.m.  When Mr. Alsup's attorney took twenty-seven minutes to increase the bid to $5,100, Ms. NeSmith's attorney took exception, and asked for a change in the rules.  After speaking to the Chancellor, the Clerk and Master limited the parties to ten minutes for subsequent bids.  The auction continued for the rest of the morning and afternoon under the new rules, and was ended after 3:00 p.m. when Mr. Alsup's attorney called, and was told that the bidding was closed because he had exceeded the ten minute time limit to respond to Ms. NeSmith's bid of $50,000.  Mr. Alsup's attorney does not deny that the limit was exceeded, but claims that he had trouble getting through on the phone.

The Chancellor ordered the plaintiff to deposit the sum of $50,000 with the Court, so he apparently concurred with the Clerk and Master's handling of the auction, and with the result, notwithstanding the appellant's objection.  The concurrence of a trial court with the findings of its Clerk and Master was once thought to be conclusive on appeal. *Maddox v. Webb Construction*, 562 S.W.2d 198 (Tenn. 1978).  While the presumption of correctness is perhaps no longer quite so strong, we believe such a concurrence should be affirmed so long as the trial court has not

- 10 -

abused its discretion. We do not believe that such an abuse of discretion has occurred in this case, and we therefore affirm the trial court.

As a final issue, the appellee argues that she is entitled to damages for frivolous appeal. Though we have found against the appellant on all issues, we do not regard his appeal as frivolous, and we decline to award additional damages.

## VI.

The judgment of the trial court is affirmed. Remand this cause to the Chancery Court of Rutherford County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
PATRICIA J. COTTRELL, JUDGE

# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE

BETTY NESMITH and
CECIL NESMITH,

    Plaintiffs/Appellees,

VS.

JOHN ALSUP, II and
TERESA ALSUP,

    Defendants/Appellants.

)
)
)
)
)    Appeal No.
)    01-A-01-9809-CH-00509
)
)    Rutherford Chancery
)    No. 96-CV-404
)
)
)    Affirmed and
)    Remanded

## J U D G M E N T

This cause came on to be heard upon the record on appeal from the Chancery Court of Rutherford County, briefs and argument of counsel; upon consideration whereof, this Court is of the opinion that in the decree of the Chancellor there is no reversible error.

In accordance with the opinion of the Court filed herein, it is, therefore, ordered and decreed by this Court that the decree is affirmed. The cause is remanded to the Chancery Court of Rutherford County for the enforcement of the decree and for the collection of the costs accrued below.

Costs of this appeal are taxed against John Alsup, II and wife, Teresa Alsup,, Principals, and Ambrose, Wilson, Grimm & Durand, Surety, for which execution may issue if necessary.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.

_____
WILLIAM C. KOCH, JR., JUDGE

_____
PATRICIA J. COTTRELL, JUDGE