EDWARD KEEL *et al. v.* L. C. SUTTON.

(*Nashville.* December Term, 1919.)

1. EJECTMENT. Complainant must recover on strength of own title.
Complainants in ejectment must recover, if at all, on the strength of their own title. (Post, p. —.)

2. ADVERSE POSSESSION. Ejectment. Uninterrupted possession for twenty years evidences title and obviates necessity for paper writings.
Where from long possession the presumption of a grant to complainants in ejectment arises, it is not necessary that they show title by paper writings; uninterrupted possession for twenty years being sufficient to evidence title and seisin in fee. (*Post*, p. —.)

Cases cited and approved: Ecales v. Cockrill, 40 Tenn., 433-435; Marr v. Gilliam, 41 Tenn., 489.

Case cited and distinguished: Cannon v. Phillips, 34 Tenn., 214.

3. EJECTMENT. Adverse possessors may maintain action as if deraigning title from State.
Complainants in ejectment, by showing adverse possession for more than twenty years, became entitled to maintain their suit just as if a deraignment of title from the State had been made or a continuous adverse possession under registered color of title for the statutory period shown. (*Post, p.* —.)

4. NAVIGABLE WATERS. Title to land not lost by reason of erosion or other submersion.
Where land becomes submerged by reason of erosion or other cause, title is not lost in the owners and possessors, and when the land reappears, either by accretion or reliction, the owners are entitled to take possession of and hold the reclaimed property. (*Post, p.* —.)

Keel v. Sutton.

Cases cited and approved:   Mulry v. Norton, 100 N. Y., 424;   City of St. Louis v. Rutz, 138 U. S., 226.

Case cited and distinguished:   Stockley v. Cissna, 119 Fed., 831.

5. **NAVIGABLE WATERS.** Lapse of time during submersion does not prevent owner from reclaiming land on reappearance.

Lapse of time during which land is covered with water does not prevent the original owner from reclaiming it and asserting title thereto when it reappears by accretion or reliction.   (*Post*, p. —.)

Cases cited and approved:     State v. Pulp Co., (119 Tenn., 130; Stockley v. Cissna, 119 Tenn., 175.

6. **ADVERSE POSSESSION.** Claimants, relying solely on presumption from possession, are restricted to extent of actual possession.

Complainants in ejectment, who present no deeds or other written evidence of title, and rely upon the presumption arising from possession for over twenty years, are restricted to the extent of their actual possession, and cannot recover up to claimed boundaries beyond.   (Post, p. —.)

7. **EJECTMENT.** Claimants entitled to recover for use of land and value of house appropriated.

Complainants in ejectment for land which they were forced to abandon on account of the inroads of a river, but which subsequently reappeared by accretion, are entitled to recover for the use of the land occupied by defendant and for the value of a house appropriated by defendant.   (Post, p. —.)

8. **APPEAL AN DERROR.** Statute providing appeals from courts of county shall be taken to Supreme Court sitting at particular city not unconstitutional.

Priv. Acts 1919, chap. 617, providing that appeals from the courts of Shelby county shall be taken to the Supreme Court sitting at Nashville, *held* not violative of Constitution article 6, section 2, providing the Supreme Court shall be held at Knoxville, Nashville, and Jackson;   the act not contravening such provision, but being within legislative determinations to expedite litigation and fundamental procedure.   (Post, p. —.)

Keel v. Sutton.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.
—Hon. Israel H. Peres, Chancellor.

W. G. Cavett and H. S. Buchanan, for appellants.

W. A. Duncan and John Johnston, for appellee.

Mr. Justice Bachman delivered the opinion of the
Court.

By this proceeding in ejectment complainants sought
to recover from defendants, F. R. Humphrey and L. C.
Sutton, a certain tract of land on the Mississippi river,
in Shelby county.

It is alleged in the bill that the complainants, as the
heirs at law of their father and those under whom he
claimed, had, prior to the year 1897, been in the open and
adverse possession of the property for a period of more
than thirty years and that on account of the encroach-
ment of the Mississippi river in the year 1897 the prop-
erty became untenantable, and they were compelled to
abandon the same. It is further stated that for the last
few years there has been a continuous accretion on the
inundated property formerly owned and occupied by
them, so that now the same has again risen above high-
water mark and is capable of occupancy and cultivation.

After the filing of a demurrer by the defendant L. C.
Sutton, which was properly overruled, the defendants en-

tered general denials of any title or interest to the property in the complainants, the defendant F. R. Humphrey relying upon a continuous, adverse possession for more than twenty years, and the defendant L. C. Sutton claiming possession under a tax title secured from the State in 1919.

Upon the hearing at the conclusion of complainants' proof the cause of action as to defendant Humphrey was dismissed, and at the conclusion of all of the proof a decree was entered by the chancellor in favor of the defendant L. C. Sutton.

An examination of the record convinces us that this decree was erroneous, and that complainants are entitled to succeed.

The facts, as disclosed, show that as early as the year 1866 one John Keel was in possession of part of the property in question, and that upon his death the same descended to Thomas Keel, father of the complainants, who occupied and cultivated the site of the property now held by defendant Sutton up until his death.

Complainants, whose ages range from forty-one to fifty-two years, were born on the place, and made the same their home until the year 1897, when it became necessary to move on account of the change of course of the river, which caused the banks to cave in, leaving only a narrow strip of some 5 or 6 acres of that which had been cultivated by them. This erosion had been in process for a number of years, but not until 1897 did it become necessary to abandon the property.

Some of the complainants removed to what is known in the record as Island Forty, a short distance from the

land in question, and have lived there until the present time. Beginning a number of years ago, accretions began to form on the site formerly occupied by complainants, and within the last four or five years this accreted land has risen above the water, so that some 20 or 25 acres are now susceptible of cultivation.

It is shown for the defendant Sutton that some 8 years prior to the institution of this action he discovered the property, then consisting of some 15 or 20 acres, and, seeing that it could be cultivated, undertook to find the owners for the purpose of leasing the same, and that some four years later, being unable to locate the owners of the property, he purchased the same at a tax sale, and immediately began its cultivation.

The tax title under which the defendant claims calls for 64 acres, described as the "east of the Kettman, one hundred and ninety-four acres, on the east bank of the river." This property had been assessed to "unknown owners," and the defendant paid taxes thereon for the years 1915, 1916, and 1917.

The title under which defendant claims is immaterial in this action, as complainants, if entitled to recover at all, must succeed upon the strength of their own title. We are of opinion that they have been successful in establishing an indefeasible title to that part of the property sued for, which was occupied and cultivated by them, and those under whom they claim, prior to the year 1897.

The insistence of the defendant here made seems to be that because no paper writings are introduced to show title the complainants are not entitled to succeed.

This is not necessary where from long possession the presumption of a grant arises. Continued uninterrupted possession for a period of twenty years is sufficient in law to evidence title and seisin in fee. As stated in *Cannon* v. *Phillips,* 34 Tenn. (2 Sneed), 214:

"Possession of land is *prima-facie* evidence of title; the law supposes that it had a legal origin, and when undisturbed for a period of twenty years, it becomes, in view of the law, an assurance of title of no less force or efficacy than the actual grant, whose place it supplies."

See, also, *Scales* v. *Cockrill,* 40 Tenn. (3 Head.), 433-435; *Marr* v. *Gilliam,* 41 Tenn. (1 Cold.), 489-501.

Complainants, under the showing made in the proof of continuous, adverse possession of the property for a period of more than twenty years, became entitled to maintain an action of ejectment therefor just as if a deraignment of title from the State had been made, or a continuous, adverse possession under registered color of title for the statutory period.

That the land in question because of the inroads of the river became untenantable, and they were consequently forced to abandon the same, did not have the effect of divesting title out of them. It is well settled that where land becomes submerged by reason of erosion, or from some other cause, title thereto is not lost, and when the same reappears, either by accretion or reliction, the original owner is entitled to take possession of and hold the property reclaimed. Angell, Tidewaters, 76, 77; *Mulry* v. *Norton,* 100 N. Y., 424, 3 N. E., 581, 53 Am. Rep., 206; *City of St. Louis* v. *Rutz,* 138 U. S., 226, 11 Sup. Ct., 337, 34 L. Ed., 941-950.

As stated by Judge LURTON, in the case of *Stockley* v. *Cissna*, 119 Fed., 831, 56. C. C. A., 343:

"As a consequence of the changed course of the river in 1876, the submerged Trigg lands have been restored, through accretion or some other process, and are now dry land. It cannot be contended that, because the surface of" this "land was washed off, Trigg lost his title to the land so submerged, beyond recovery. The law is otherwise. Land lost by erosion or submergence is regained to the original owner, . . . when by reliction or accretion the water disappears and the land emerges."

It is also the law that the lapse of time during which the land is covered with water does not prevent the original owner from reclaiming the same and asserting the priority thereto when it reappears. See *State* v. *Pulp Co.*, 119 Tenn., 130, 131, 104 S. W., 437; *Stockley* v. *Cissna*, 119 Tenn., 175, 176, 104 S. W., 792.

It is urged for the defendant that the necessary adverse possession is not shown to have existed on any particular or specified part of the land claimed by complainants, and especially of that part now held by defedant. It is true that complaiants seek to recover a specified boundary, containing some 253 tcres. This they are not entitled to do. Presenting no deeds or other written evidence of title, and relying upon the presumpaion arising from a possession of over twenty years, they are restricted to the extent of their actual possession, and not to that of the boundaries claimed. The proof shows that at the time of the submergence of the property they had, for the necessary period, been in posses-

sion of and cultivating a tract of some twenty-five or thirty acres lying between the east bank of the river and the west bank of the lake, as it is termed in the record, and located where there now exists the bar which the defendant claims and has under cultivation. A dwelling house, stables, and cribs were maintained thereon until such became impossible by the change of the river.

We are of opinion that the complainants are entitled to the possession of that part of the arable land on the bar which is situated immediately south of the Archer tract, now occupied by Humphrey, and bounded by the lake on the east and the river on the west.

The decree of the chancellor will be reversed, and because of the insufficient description of the exact boundaries of the land herein awarded a reference will be had for the purpose of determining same and awarding decree thereon. Complainants seek to recover for the use of the land occupied by defendant during the years 1915, 1916, and 1917, and also the value of a small house erected on the property by Jesse Keel which was appropriated by the defendant. Our examination of the proof with reference to these items justifies an award of $100, for which amount decree will be entered. The costs of the cause will be paid by the defendant.

On the hearing of the cause in this court a motion was made by appellants to hear and determine the cause at Jackson, instead of Nashville, the motion being predicated upon the alleged unconstitutionality of chapter 617 of the Private Acts of 1919, which provides that appeals from the courts of Shelby county shall be taken to the Supreme Court sitting at Nashville.

Keel v. Sutton.

Section 2, Article 6 of our Constitution provides that the Supreme Court shall be held at Knoxville, Nashville, and Jackson. Nothing in the act assailed contravenes this provision; the Legislature would be powerless to so undertake. The expedition of litigation and facility of judicial procedure, by proper constitutional enactment, are matters within legislative determination; such were the evident purposes of the act in question, and there exists no valid constitutional objection thereto.