J. F. SCOTT, et al. v. B. M. MANGRUM.

Middle Section.   March 10, 1928.

438

R. E. Dotson, of Pulaski, for appellant.
W. S. Fleming, Sr., of Columbia, for appellees.

FAW, P. J. Three brothers, J. F. Scott, O. F. Scott and L. N. Scott, citizens of Giles county, Tennessee, brought this suit by bill in the chancery court of Giles county, on August 21, 1925, against B. M. Mangrum, a citizen of Giles county, Tennessee.

Complainants allege in their bill that they are the owners in fee and in possession through their tenant, John Stewart, of a tract of land situated in the 14th District of Giles county, Tennessee, which land is fully described by metes and bounds in the bill.

It is further alleged in the bill that complainants and their brother, B. W. Scott, recovered possession of said land from their tenant and those in privity with him, to-wit: Tom Kersey, in the Spring of 1924, and were put in possession thereof by the removal of Tom Kersey and his wife Serena Kersey and B. M. Mangrum, by the sheriff of Giles county, acting under a decree of the court of chancery at Pulaski in the cause of J. F. Scott, et al. v. Tom Kersey and wife, which decree was affirmed by the Supreme Court in January, 1925, and that since that time complainants have purchased the share of their brother, B. W. Scott, in said land by deed which is recorded in the Register's office of Giles county, Tennessee.

Complainants further allege that, after complainants had been put in possession of said land and B. M. Mangrum had been ejected therefrom by the sheriff of Giles county under the process issued in

the above-styled cause (which process directed that complainants be put in peaceable possession of said property), defendant Mangrum first cut the wire that fastened the gate leading into the woods, and later cut the gate down, and still later cut the wire fence around the woods and began to cut and haul the merchantable timber out of the woods on said premises; that when complainants would restore and repair the wire that had been cut, defendant Mangrum would cut it again, and that he has continued these depredations and trespasses on complainants' said premises and is cutting and carrying off the timber thereon which constitutes its chief value, and he will continue to do so and is about to cut and remove all of the valuable saw timber on said premises.

Complainants further allege that defendant is insolvent; that it would require a multiplicity of suits at law (to recompense complainants) for these repeated trespasses; that complainants have no adequate remedy at law and are about to suffer and will suffer irreparable injury unless defendant is enjoined from entering upon said land, removing the timber, cutting the fences, opening the gates or in any manner interfering with complainants in their possession and ownership of said land.

Upon the foregoing averments complainants pray (1) for process etc.—with waiver of answer under oath; (2) that a writ of injunction issue and be served upon the defendant enjoining defendant, his agents and employees, from coming upon the above-described premises, cutting the fence, breaking down the fence or gates, cutting any trees standing on the said premises, removing any trees that have been cut by him now on the ground, and from in any way trespassing upon or entering on said premises, and that upon final hearing such injunction be made perpetual; (3) that complainants have an account with defendant to ascertain and report the value of the logs already removed from said premises by defendant, his agents and employees, as well as the damages done to the premises by the unlawful acts of defendant and a decree to the amount thereof together with the costs of this suit; and (4) complainants pray for general relief.

A temporary injunction as prayed for in the bill issued and was served on the defendant pursuant to a fiat granted, on preliminary application, by the judge of the eleventh judicial circuit.

Defendant Mangrum answered the bill on September 8, 1925, and denied that complainants are the owners of the land described in the bill. Defendant averred in his answer "that the land owned by him is situated in the 14th Civil District of Giles county, Tennessee, and is bounded on the north by Serena Kersey, south by Prentiss, east by Forgey and Kennon, and west by Nichols and Swan, containing sixty-two acres, more or less."

Defendant then averred in his answer that this land was purchased by himself and Serena L. Kersey April 13, 1915, by deed of that date which was duly acknowledged and noted for registration on August 17, 1915, and duly recorded in the Register's office of Giles county, Tennessee, in Deed Book No. 74, page 452, August 19, 1915; that immediately after the one-half interest was levied on and sold through the circuit court of Giles county, Tennessee, in 1918, which was a public record advertised in the local papers and brought directly to the attention of the complainants, and that this was more than seven years before the filing of complainants' bill in the present case.

Defendant says further in his answer that it will be seen from an examination of the records that the description in his registered deed covers more land than is described in the bill, but when respondent ascertained the calls from the grant to this land, the acreage was reduced but included the lands described by the metes and bounds set out in the bill, and that in the division between respondent Mangrum and Serena L. Kersey, respondent took the south end of said land and marked the line distinctly and has exercised absolute control ever since; that the tract of land in possession of respondent is the south end of said land with the division line distinctly marked dividing same.

In his answer defendant Mangrum denies that complainants and their brother B. W. Scott recovered possession against him in any suit whatever, and he further denies that complainants were put in possession by the removal of himself from said land by the sheriff of Giles county, acting under a decree of the chancery court at Pulaski in the case of J. F. Scott, et al. v. Tom Kersey and wife, which decree was affirmed by the Supreme Court in January, 1925. Defendant avers that he was not a party to said suit and is not bound by any decree therein; that he continued his possession through the period of said suit and has continued ever since, and is using the land as he sees fit, cutting and removing the timber as his own, and doing other things usually done in the possession of land by farmers and other people owning land; that he has held and owned said land under a conveyance duly registered in the Register's office of Giles county, as herein shown, for more than seven years; that his possession was actual, by fences, enclosures, buildings, and cutting and removing timber, which was open and notorious, so much so that everybody knew it, and defendant used the lands during this period as his own adversely to everybody, especially the complainants; that complainants, and those holding under them, have neglected for the term of seven years and more to avail themselves of any benefit of title, legal or equitable, by action at law or in equity effectually prosecuted against respondent, in possession under recorded assur-

ance of title, under sections 4456 to 4458, Shannon's Code, and respondent especially pleads the statute set forth in the foregoing Code sections.

Respondent denies the right of complainants to an injunction against him, and avers that the injunction is greatly to his injury and harm and is doing him an irreparable damage and should be dissolved.

Defendant's answer concludes with a general denial of all material averments not specifically denied.

Upon the issues thus made by the bill and answer the case went to proof, and was thereafter heard and determined by the Chancellor, and a decree was entered as follows:

"This cause came on this 12th day of April, 1927, to be heard by the Chancellor, upon the pleadings, the proof, stipulations on file, and the original records in the causes mentioned in the said stipulations, from all of which it appears to the court that complainants are entitled to the injunctive relief prayed for in their bill, with reference to the tract of land described in the bill as follows:

"Situated in the 14th District of Giles county, Tennessee, beginning at a set stone, James Kannon's N. W. corner; thence S two and one-half degrees W passing Kannon's corner, at 120 poles five links and with Colvert and Power in all 209 poles five links to a pile of rock with bent hickory white oak and chestnut pointers; thence N eighty-seven and one-half degrees W ninety-six and three-fifths poles to a stake in Foster's E boundary line; thence with same and Mrs. Swann's heirs N two and one-half degrees E 209 poles five links to a stake in the middle of old road in Keltner's boundary line; thence S eighty-seven and one-half degrees E ninety-four poles five links to the beginning, containing by survey 125 acres, more or less.

"It is therefore ordered, adjudged and decreed by the court that the preliminary injunction granted in this cause be and the same is hereby made perpetual and that the defendant, B. M. Mangrum, his agents and employees are perpetually enjoined from coming upon the above-described premises, from cutting the fences, or breaking down the fences or gates, which enclose said premises, from cutting any trees standing on the said premises, or removing any that have been cut by him, now on the ground, and from in any way trespassing upon or entering upon said premises.

"It is further ordered, adjudged and decreed by the court that the complainant have and recover of the defendant, B. M. Mangrum the cost of this cause, for which let execution issue.

"To all of the foregoing decree the defendant, B. M. Mangrum excepts as well as he excepts to all other decrees adversely made to him herein heretofore, and prays an appeal to the next term of the Court of Appeals at Nashville, Tennessee, which appeal is by the court granted upon the execution of an appeal bond in the penal sum of $250, or taking and subscribing to the oath for poor people.

"For good cause shown the said B. M. Mangrum is allowed thirty days within which to perfect his appeal by executing bond or taking the oath."

Defendant perfected his appeal, and has assigned errors as follows: (1) "The court erred in sustaining the bill of appellees and granting the injunctive relief prayed for in the bill;" and (2) "the court erred in adjudging the cost of this cause against the defendant, B. M. Mangrum."

These assignments do not conform to the rules of this court, which require that assignments of error shall show specifically wherein the action complained of is erroneous, and how it prejudiced the rights of the appellant. But, as the assignments of error are accompanied by a brief and written argument in which the grounds on which defendant is relying for support of his assignments of error are stated, and complainants, appellees, have not moved to strike the assignments but have replied thereto, we have considered the case on its merits and will decide the questions arising on the record.

The material facts of the case which, in our opinion, are supported by the proof, will now be stated.

The tract of 125 acres of land described in the pleadings and in the Chancellor's decree was in the continuous possession of the complainants and their predecessors in possession from the year of 1863 until a day in November, 1910, when complainants, together with their brother B. W. Scott, conveyed same by deed to one W. L. Renfro. On April 11, 1911, W. L. Renfro and his wife filed a bill against their said grantors seeking a rescission of the aforesaid contract of purchase, a cancellation of the deed made to them by the Scotts, an injunction to restrain their vendors from collecting notes executed for a part of the purchase price, and for a recovery of the sums paid on the purchase price. The substance of the averments on which Kersey sought a rescission, etc., was that he had discovered since his purchase that neither his grantors, nor their father W. W. Scott, had any title whatever to the land which they sold to complainants.

The Scotts (the present complainants and B. W. Scott) did not litigate the aforesaid suit brought by Renfro, but consented to a rescission, and a decree was entered reciting that it appeared to the

court that "the matters in controversy had been compromised and settled." This decree, after adjusting the equities of the parties on the basis of a rescission (pursuant to the agreement of the parties), contained a further provision as follows:

"All the title acquired by the complainant, by virtue of said deed mentioned in the bill, is hereby divested out of him, the said W. L. Renfro, and vested in Wm. Scott, James Scott, Floyd Scott and Lem Scott, equally as tenants in common, and the court doth so decree."

Upon the entry of the above-mentioned decree, W. L. Renfro, who had been in possession of the land since the aforesaid deed was made to him, surrendered possession to the Scotts (the present complainants and B. W. Scott), and B. W. Scott, acting for himself and his co-tenants, rented the land, by parol lease, to one Tom Kersey, who moved, with his wife and family, into one of the two dwelling houses on the tract and continued to live there until he was ejected in the manner hereinafter stated.

On March 11, 1922, the present complainants and their brother B. W. Scott brought suit, in the nature of an action of unlawful detainer, by bill in the chancery court of Giles county, against Tom Kersey and his wife Serena L. Kersey, to recover the possession of the same tract of land described in the bill and decree in the case we are now reviewing, and in that case (styled J. F. Scott, et al. v. Tom Kersey, et al.) a final decree was entered on April 21, 1924, as follows:

"This cause came on to be heard by Honorable Thomas B. Lytle, Chancellor, on this April 21, 1924, and former days of the court, upon the pleadings, the proof and the argument of counsel, from all of which it appears to the court that the defendants obtained possession of the tract of land described in the bill and hereinafter described, under a lease or rent contract, with the complainants, made by Tom Kersey about the year 1911, and that the defendant, Serena L. Kersey, was and is the wife of Tom Kersey and obtained possession with him under said rental contract, and that defendants without having notified complainants that they had abandoned this relationship of landlord and tenant and without surrendering possession of the land and attempting to set up title thereto, and an adverse holding against the rights of complainant to the possession of said land, and the court being of the opinion that the defendants are estopped to deny or dispute their landlord's title or right to have the possession of said land surrendered to complainants and that the complainants are entitled to the possession of said land, it is, therefore ordered, adjudged and decreed by the court that a writ of possession issue to the sheriff of Giles county, ordering him to eject the defendants, Tom Kersey and wife, Serena L. Kersey and all other persons claiming possession not in

keeping with this decree, from said land and to place the complainants, J. F. Scott, B. W. Scott, O. F. Scott and L. N. Scott, in peaceable possession of said land, which is bounded and described as follows:—

"Situated in the 14 District of Giles county, Tennessee, beginning at a set stone, James Kannon's northwest corner; thence S two and one-half W passing Kannon's corner at 120 poles five links and with Colvert and Powell, in all 209 poles five links to a pile of rock with bent hickory, white oak and chestnut pointers; thence N eighty-seven and one-half W ninety-six and three-fifths poles to a stake in Foster's E boundary line; thence with same and Mrs. Swann's heirs N two and one-half E 209 poles five links to a stake in the middle of old road in Keltner's south boundary line, thence S eighty-seven and one-half E ninety-four poles five links to the beginning containing by survey 125 acres, more or less.

"It is also ordered, adjudged and decreed by the court that the complainants have and recover of the defendants the cost of this suit, for which let execution issue. From all of the foregoing decree, the defendants except and pray an appeal to the next term of the Supreme Court to be held in Nashville, Tennessee, December term, 1924, which appeal is granted upon complainants executing bond for costs of appeal, or taking oath prescribed for poor persons, within thirty days from the rendition of this decree, and in the event the defendants or either of them shall perfect said appeal, and thereupon the complainants shall execute bond with good and sufficient security in double the value of two years' rent of the premises, conditioned that he or they will pay all costs and damages, which may be sustained by defendants from complainants' wrongfully enforcing said writ of possession and will abide by and perform the judgment of the appellate court rendered upon the final hearing of this cause; upon such bond being executed, the writ of possession shall issue notwithstanding said appeal is taken, unless the defendants shall execute a like bond to complainants for rent in addition to the bond for cost."

Kersey and wife perfected their appeal from the foregoing decree, but the complainants gave bond for rents as provided in the decree, and a writ of possession issued and was duly executed. The decree of the chancery court (in said case of J. F. Scott, et al. v. Tom Kersey, et al.) was subsequently affirmed by the Supreme Court. The land described in the pleadings, decree and writ of possession in the aforesaid suit brought by the Scotts against Tom Kersey and wife is the same tract of 125 acres described in the bill and decree in the

instant case. The return of the executing officer endorsed on the writ of possession is in these words:

"This writ came to hand day issued, and I executed same by removing all persons from said land, and giving possession of said premises herein described to the complainants Scott, as herein directed.

"This the 7th day of June, 1924.

"Clifford Thurman,
"Deputy Sheriff, Giles County."

When the Scotts obtained possession in the manner aforesaid, they immediately placed an agent, one Hayes Thomas, colored, in charge of the property, and Thomas remained in possession, living in a house on the land, for a short time, and until the Scotts leased the land (the entire tract of 125 acres) to John Stewart, who, according to the proof, has since lived upon the land and remained in the continuous possession of the property.

By deed dated, executed and acknowledged on June 29, 1925, and registered on July 1, 1925, B. W. Scott conveyed all his interest in the land here in controversy to J. F. Scott, one of the complainants, and this suit was thereafter brought on August 21, 1925.

The facts thus far stated appear from uncontradicted proof, except that Tom Kersey testified that he did not rent the land in question from the Scotts, and did not attorn to them; but the clear weight of the proof is to the contrary, and, as we have seen, the court held against Kersey and wife on this specific issue in the aforementioned suit brought against them by the Scotts, to which suit, however, defendant Mangrum was not a party.

It is seen from our statement of the pleadings in the present suit that complainants allege in their bill that they are "the owners in fee" of the tract of land described in the bill. Inasmuch as complainants also allege that they are in possession of said land, through their tenant John Stewart, and the suit is brought to enjoin trespass and protect the possession of complainants, proof of the averment that complainants are "the owners in fee" of the land is not essential to support the Chancellor's decree. Beaufort Land and Investment Company v. New River Lumber Co. (S. C.), 30 L. R. A. (N. S.), 243. The party in actual possession of land can maintain an action for trespass thereon. Clark v. State, 131 Tenn., 372, 376, 174 S. W., 1137; Butler v. State, 128 Tenn., 164, 167, 159 S. W., 602; Deaderick v. State, 122 Tenn., 222, 227, 122 S. W., 975; Large v. Dennis, 5 Sneed, 595, 597; Allen v. McCorkle, 3 Head, 182; 26 R. C. L., p. 956, sec. 33; Note, 30 L. R. A. (N. S.), p. 266.

We may say, however (without deciding the point), that the record in the case at bar affords much support for a finding that the ancestor of complainants had acquired title in fee to said land by

prescription. There is no sufficient proof that the complainants or their predecessors in possession had any registered assurance of title, or paper title of any kind, to the land now in controversy, unless the decree of the chancery court in the W. L. Renfro case, supra, be so considered; but there is undisputed proof that W. A. Scott, the grandfather of complainants, was, as early as the year of 1863, claiming the ownership and right to possession of said land by virtue of a "transfer" from one Howard, and was, without opposition from any source, exercising dominion and control over same and paying taxes thereon; that the possession thus acquired by W. A. Scott passed immediately from him to his son W. W. Scott, the father of complainants, and, upon the death of W. W. Scott, intestate, prior to 1910, the possession passed directly to the three complainants and their brother B. W. Scott—the four Scott brothers last named constituting all of the heirs-at-law of W. W. Scott.

It does not appear that the ancestors of complainants at any time lived on said land or had tenants living thereon. The record is silent as to whether anyone lived on the land prior to the time it was conveyed by complainants to W. L. Renfro in 1910, but it is shown by the record that W. W. Scott had a sawmill on the tract at some time during the period of his possession. Although it does not appear when the tract was first fenced, there is no suggestion in the record that any uncertainty has ever existed, or that any controversy with adjoining proprietors has arisen, concerning the boundary lines of the tract claimed by complainants, since the possession thereof was acquired by W. A. Scott in 1863 as aforestated. The tract was generally known and recognized in the community as the "Scott land," and the possession of the Scotts was open, notorious, undisputed and adverse to all other persons, and was continuous and uninterrupted, so far as appears, from the year of 1863 until W. L. Renfro went into possession thereof under his deed from the Scotts in 1910. There are cases where "neither residence on nor cultivation of the land is necessary to constitute actual possession" (Green v. Cumberland Coal & Coke Co., 110 Tenn., 35, 40, 72 S. W., 459); and we are not prepared to say that this is not such a case.

If the character of the possession maintained by the Scotts for the long period of time stated—much more than the prescriptive period of twenty years—was in law "actual possession," they acquired title in fee to the land now in dispute, through the presumption of a grant arising out of an uninterrupted and continuous adverse possession thereof for more than twenty years. Keel v. Sutton, 142 Tenn., 341, 219 S. W., 351; Ferguson v. Prince, 136 Tenn., 543, 556, 190 S. W., 548. But complainants do not pray for an adjudication of the title, and, so far as the record shows, the Chancellor made no specific adjudication on that point. We will, therefore, pretermit the question.

The tract of land described in complainants' bill is approximately a parallelogram 209 poles long and from ninety-four to ninety-six poles wide. Defendant claims that he is the owner and was, at the time complainants filed their bill in this case, in possession of about sixty-two acres comprising the southern one-half of said tract. He claims title by virtue of a deed executed by Elizabeth R. Lee, dated April 3, 1915, acknowledged by the maker on August 14, 1915, and registered August 19, 1915, which deed purports to convey, for a consideration not stated, to B. M. Mangrum and Serena L. Kersey, as equal tenants in common, "a certain tract of land in the 14th Civil District of Giles county, Tennessee, bounded and described as follows, to-wit: On the north by the lands of Fate Davis, Callahan and others; on the east by the lands of Anglish, Calvert and others; on the south by the lands of Prentiss, Thompson and others, and on the west by the lands of Waldrop and others, containing by estimation 300 acres, be the same more or less."

This deed contains a recital, purporting to be made by the maker thereof, as follows: "I own this land as a descendant and legal heir of Elisha Estes, deceased, to whom the same was granted by the State of Tennessee by Grant No. 19148 on the second day of November, 1847."

There is in the record a certified copy of Grant No. 19148, by the State of Tennessee to Elisha Estes, dated October 5, 1848, for 200 acres in Giles county, Tennessee, but there is no evidence in the record that the land in controversy in this case is covered by or included in the tract thus granted. There is evidence that the land in controversy was, many years ago, known as the Elisha Estes land, but this is not sufficient to identify it as a part of the land described in the aforementioned Grant No. 19148.

If there is any evidence that the land involved in this suit is a part of the 300 acres described in the aforesaid deed of Elizabeth R. Lee to B. M. Mangrum and Serena L. Kersey, it is very meagre; but, if it be assumed that the land here in controversy is a part of the tract of 200 acres described in Grant No. 19148, supra, and also a part of the tract of 300 acres described in the aforesaid deed made by Elizabeth R. Lee, it does not follow (as between the parties to this suit) that Elizabeth R. Lee is, or was, a descendant and heir-at-law of Elisha Estes, deceased, and as such had title to said land, for there is no proof of the truth of the recitals to that effect in the deed.

"The recitals of an instrument are evidence only against the parties thereto; they are not admissible against third persons as proof of the facts therein recited; as to strangers such recitals are res inter alios acta." 10 R. C. L., p. 1143, sec. 348; Swainson v. Scott, 111 Tenn., 140, 143, 76 S. W., 909; Wilcox v. Blackwell, 85 Tenn.,

352, 354, 41 S. W., 1061; Henderson v. Galloway, 8 Humph., 692; A. and E. Anno. Cas. 1915-A, 93 and Note page 96.

The deed here in question is a "recent deed," and is not an "ancient deed," as in the case of Fielder v. Pemberton, 136 Tenn., 440, 448, 189 S. W., 873.

Moreover, there is no pretense that Elizabeth R. Lee was, at the time she made and delivered said deed (or at any other time), in possession of the land involved in this suit, or any part of same. Said land was then in the adverse possession of others (the Scott brothers) and said deed was, by virtue of our champerty statutes (Shan. Code, secs. 3171-3172), a nullity and of no effect against strangers or as between the parties' themselves. Green v. Cumberland Coal & Coke Company, supra, page 38.

At the time the aforesaid champertous deed was made, Tom Kersey was in possession of the entire 125-acre tract in question as the tenant of complainants. He and his wife were living on the land. The general rule is too well settled to need citation of authority that a tenant is estopped to deny his landlord's title, and cannot repudiate his landlord's title and set up an adverse claim to the leased premises without first surrendering possession to the landlord. Defendant Mangrum did not live on the disputed land, but lived in the same neighborhood and was familiar with the situation. After the aforesaid deed was made to them by Elizabeth R. Lee, defendant Mangrum and Tom Kersey orally agreed upon a partition of the 125-acre tract occupied by Kersey, by which it was agreed that defendant Mangrum would take the southern sixty-two acres as his part of the land.

The record satisfies us that defendant Mangrum joined Tom Kersey in a collusive agreement to procure the deed from Elizabeth R. Lee and partition the land between themselves, and that he entered into this agreement with full knowledge of the previous possession of the Scotts and that Tom Kersey had gone into possession as the tenant of the Scotts. The deed from Elizabeth R. Lee was made to Serena L. Kersey at Tom Kersey's suggestion, for the reason that Tom had been, or was being, prosecuted in the criminal courts, both State and Federal, for "bootlegging," and he was afraid to take the title in his own name.

"Not only tenants but their privies in blood or estate are estopped from disputing the title of the landlord. The estoppel extends to subtenants, assignees of the lessee, a mere licensee holding under the lessee, or anyone who succeeds to the possession to or from the tenant. This includes heirs of a tenant who are in possession after his death, purchasers of the leased premises from the lessee, the wife of a tenant in possession with him, and the husband of the tenant who is in possession in her right. A fortiori a person obtaining posses-

sion through collusion with the tenant is estopped to deny the landlord's title until he surrenders possession." 24 Cyc., pp. 943-944.

At the time the aforementioned writ of possession was executed on June 7, 1924, defendant Mangrum, although not living on the land, was present at the home of Tom Kersey on the tract in question when the executing officer arrived, and he admits in his testimony that he understood at the time that the officer came to take possession of the "whole thing." Complainants were put in possession of the entire tract at that time, and they placed John Stewart in possession of the entire tract. A short time before the bill was filed in this case, defendant Mangrum went upon the southern part of the tract (the part allotted to him in the attempted partition between himself and Kersey) and cut some timber thereon and hauled it away, and about the same time some one cut the fence. Stewart, the occupant of the land, warned defendant Mangrum to cease his depredations and keep off of the land, and Mangrum retorted with a similar notice to Stewart, interlarded with profane language. Stewart thereupon notified complainants and this bill was promptly filed.

The entire tract of 125 acres was under fence, and Stewart and his family were the only persons living thereon. Stewart was occupying the land under the aforesaid lease of complainants for the whole tract. He occupied the whole tract, either for the cultivation of crops or for pasturage. The southern part of the tract was timbered, except an "old field" (area not shown) which had once been cultivated but, at some period not shown, had "grown up." However, the proof is that this woodland afforded excellent pasture, and that Stewart constantly pastured his livestock—cows and horses—on that part of the tract which defendant is now claiming.

Without extending this opinion by a further statement of the details of the evidence, we find that defendant was a trespasser on land in the possession of complainants, and we concur in the finding and conclusion of the Chancellor that the complainants are entitled to the injunctive relief prayed for in their bill. The defendant's assignments of error are therefore overruled and the decree of the chancery court is affirmed. The costs of the appeal will be adjudged against the appellant B. M. Mangrum.

Crownover and DeWitt, JJ., concur.