

FILED

01/30/2017

Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
November 22, 2016 Session

## JACK OSBORNE, ET AL. v. MICHAEL HARDIN

### Appeal from the Chancery Court for Unicoi County
No. 7799     John C. Rambo, Chancellor

---

### No. E2016-01158-COA-R3-CV

---

Jack Osborne, Margaret Howell, and Kathy Street (collectively "Plaintiffs") sued Michael P. Hardin ("Defendant") seeking to extinguish any right Defendant had to a right-of-way ("the Right-of-Way") on real property located in Unicoi County, Tennessee. After a trial, the Chancery Court for Unicoi County ("the Trial Court") entered a judgment finding and holding, *inter alia*, that the Right-of-Way is for the benefit of both Plaintiffs and Defendant and neither may block or impede the other's use of the Right-of-Way. Plaintiffs appeal to this Court raising issues regarding whether the Trial Court erred in setting aside a judgment by default and proceeding with trial, whether the Trial Court erred in proceeding with trial in the absence of two of the Plaintiffs, and whether the Trial Court erred in finding that Plaintiffs failed to prove adverse possession. We find and hold that the Trial Court did not abuse its discretion in setting aside the judgment by default, that Plaintiffs never objected to proceeding with trial in the absence of the two Plaintiffs, and that Plaintiffs failed to prove adverse possession. We affirm the Trial Court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and JOHN W. MCCLARTY, JJ., joined.

James D. Culp, Johnson City, Tennessee, for the appellants, Jack Osborne, Margaret Howell, and Kathy Street.

James S. Pate, Erwin, Tennessee, for the appellee, Michael Hardin.

# OPINION

## Background

Plaintiffs filed their Complaint to Quiet Title in April of 2015. On August 10, 2015, Plaintiffs filed a Motion for Default alleging, in pertinent part, that Defendant had been served with Plaintiffs' complaint by hand delivery on July 2, 2015, and that Defendant had failed to answer the complaint. A hearing was held on the Motion for Default on September 10, 2015. Defendant appeared pro se at the hearing on the motion for default intending to defend against Plaintiffs' complaint. After the hearing on the motion, the Trial Court entered an order on September 10, 2015 granting Plaintiffs judgment by default and extinguishing Defendant's right to use the Right-of-Way.

Defendant then hired an attorney and filed a motion to set aside the September 10, 2015 judgment by default alleging that Defendant was pro se when he was served with the complaint and did not understand the significance of the papers served on him, that Defendant did appear in court prepared to defend against the complaint when he received notice of the hearing, that Defendant would be able to prove his right to use the Right-of-Way, and that Plaintiffs would not be prejudiced if the suit were reinstated. After a hearing, the Trial Court entered its order on December 8, 2015 setting aside the September 10, 2015 judgment by default and setting the case for trial. In its December 8, 2015, order the Trial Court found and held, *inter alia*:

> [Defendant] testified that he was self-represented during the initial course of the adjudication of this case until he retained Mr. Pate for the purpose of setting aside the default judgment. He testified, and the Court finds his testimony persuasive, that he did appear in court on September 10, 2015, with his deeds and records for the purposes of proving his title, and he appeared with the idea that he would have his day in court and would assert why he believes Plaintiffs are not entitled to the judgment that they received.

> He operated under the assumption that when he was noticed to be in court that when he appeared in court he would then have his opportunity to have his access to justice. He operated without the benefit of legal counsel, but his actions reveal to this Court that he had no intention of willfully allowing a judgment to go against him without attempting to defend himself. He did not ignore the notice to come to court; he was here.

2

He has asserted what may be a meritorious defense and the record is not persuasive that Plaintiffs will suffer prejudice if the default judgment is set aside. His inadvertence in not answering the complaint was excusable because he did come to court when he thought he had an opportunity to address the merits of the matter and he has failed procedurally.

This is a case where the Court is cognizant that the public policy of the State of Tennessee is that justice favors trial on the merits, and in this case the default judgment is set aside and the case shall be set for trial.

The case proceeded to trial without a jury in April of 2016.

Plaintiff Jack Osborne testified at trial that he lives at 458 Rock Creek Road, which is across the street from the parcel containing the Right-of-Way. Mr. Osborne and his wife purchased the 458 Rock Creek Road property in 1973. Prior to that time, Mr. Osborne lived in his parent's house at 461 Rock Creek Road, which is the parcel that contains the Right-of-Way. Mr. Osborne was 16 or 17 years old when his parents purchased the 461 Rock Creek Road property in 1964. At that time there was a barn and a small farm on the property, and it was Mr. Osborne's understanding that Mr. C.E. Tittle used the Right-of-Way to get a tractor in and out. Mr. Osborne stated, however, that he never saw Mr. Tittle "go through there with farm machinery." Mr. Osborne testified that after his parents purchased the property, Mr. Osborne never saw Mr. Tittle go in and out of the property. Mr. Osborne stated that he believed that Mr. Tittle died in the mid-1970s.

Mr. Osborne stated that he never saw anybody use the Right-of-Way. He admitted that from the time his parents purchased the property he was aware that someone else, Mr. Tittle, had the right to use the Right-of-Way "for farm machinery." Mr. Osborne admitted, however, that the description in the deed says nothing about limiting the use of the Right-of-Way to farm machinery. Mr. Osborne never saw Mr. Tittle or Mr. Tittle's heirs use the Right-of-Way, but stated that he has seen Defendant go "through there a few times, but nobody else."

Mr. Osborne was asked what his parents used the Right-of-Way for, and he stated: "Well, our driveway is within two foot of the house; so we used it for our driveway, probably about 20 foot of it is garden space, and the rest is just grass yard." When asked how large the grass yard section was, Mr. Osborne stated: "it runs all the way across the property; so it's probably around 70 foot at that point." Mr. Osborne stated that they mowed the yard and kept the driveway graveled and maintained.

3

Mr. Osborne stated that the driveway was "probably around 14 foot [wide] in the front and it goes back about halfway of the property." The driveway abuts Rock Creek Road. Mr. Osborne stated that they put gravel down "probably [in] '65 because we, you know, when we moved in we had some things to do." The section with the gravel does not extend all the way to Defendant's property.

Mr. Osborne testified that about ten or twelve feet of the garden area extends into the Right-of-Way. He stated that he maintained the garden "since 1964," and further explained: "My parents did it for some years and then we've maintained it for several years. And after Dad got sick in the '80s, then I pretty well maintained it myself after that." Mr. Osborne stated that from the time his parents purchased the property until the mid-1990s, they tended the garden "[p]retty much every year." Mr. Osborne admitted that since his father passed away in 2002, they have not tended the garden. When questioned further, Mr. Osborne testified that prior to 2002, the last time he tended the garden was in the mid-1990s. He also admitted that he did miss "[m]aybe a couple" of years because he was working and was too busy.

Mr. Osborne testified that he never erected any buildings in the Right-of-Way, but stated that he has a storage building in the area that might extend part way into the Right-of-Way. Mr. Osborne, however, was unsure if the building actually did or did not extend in to the Right-of-Way. He admitted that the storage building does not block the Right-of-Way. The storage building has been there for approximately two years.

Mr. Osborne never asked anyone's permission to use the Right-of-Way. He was asked if he ever tried to block the Right-of-Way, and he stated:

> No. . . . Let me - - let me take that back. A few years ago, when [Defendant] got involved and was talking about building a road and he was telling our neighbors that he was going to build a road through there and that he owned part of this and so forth - - so I went back there and I put up a no-trespassing sign because, you know, we'd maintained that for 50-some-odd years and I didn't think it would be appropriate to build a street through there two foot from the house.

Mr. Osborne testified that he talked to Defendant directly and stated: "He just said he was going to try to get the City to open that back up so he could use it to build storage buildings or whatever he decided to do back there." To Mr. Osborne's knowledge, Defendant never mowed the Right-of-Way. Mr. Osborne stated: "he shouldn't have had to because I kept it mowed."

4

Defendant lives in Jonesborough and not on his property accessed by the Right-of-Way. Defendant testified he has used the Right-of-Way: "Just to pass through onto my property sometimes when I'm short-cutting. Instead of going up and going down Elliot Street, if there's nobody parked in that thing, I'll just cut through that road and go straight into my property." He testified that he never has been told not to use the Right-of-Way. Defendant stated that he probably has used the Right-of-Way "half a dozen or so times." Defendant testified:

> We got the property probably - - and I'm going to guess at the dates or the year - - probably late 2007, 2008. Mr. [W.O.] Tittle was still alive when we bought the property. We promised him not to do nothing with the property until he passed away. . . . So the property just sat for a couple of years until he passed away. The, when I got complete ownership of the property, I started cleaning it up and then that's the times that I - - that I went through there.

Defendant admitted that he never spoke directly with Mr. Tittle, but instead spoke with Mr. Tittle's children "Kathy and Keith."

Defendant testified that there have been a few occasions on which the Right-of-Way has been blocked. He stated:

> The one time when the one renter moved in there when they were setting the building and stuff, that's when Mr. Osborne blocked it. The next week, you know, I had spoke with the renter, explained to him that it's perfectly fine for him to use it. I never claimed that I owned the property. I just wanted him to know that it was a right-of-way that I could go in and out, so they couldn't block it.

He stated that this incident occurred a couple of years prior to trial.

When questioned about the garden space that Plaintiff Mr. Osborne had testified about, Defendant stated:

> The garden space that they talk about is behind it and it's not really a garden space. I mean, it's weeds as tall as I am. But there's still probably a 15-foot section, which is this road we're talking about, that's always been mowed and maintained. Since I've owned the property, that has been cleared from my property all the way to Rock Creek Road.

5

Defendant stated that the portion Plaintiffs refer to as garden is "just high weeds." Since he purchased the property, Defendant never has seen the area cultivated, just mowed. He stated that "there used to be an old wrecked boat that sat back there," and when he first purchased the property there also was "an old Firebird that sat back there, an old boat, just stuff that didn't run."

Defendant testified that he mows a portion of the Right-of-Way and explained that he mows twenty feet "all the way around my property lines" and down to where the outbuilding sits. Defendant does not mow beyond the outbuilding "because they always mowed that." He stated:

> When I went up to mow one day and I seen the building there, that's when I went over and spoke with the renters and - - you know, and you can still get around it. I said, "You know, I don't have an issue with it sitting there because I can still get around it, but we can't block this permanently."

Kathy Bailey, who along with her brother, Keith Tittle, deeded Defendant's property to him, testified at trial. Ms. Bailey derived her right to the property from her father who had owned it for years. Ms. Bailey testified that her father used the Right-of-Way and that she also had used the Right-of-Way "maybe three, four times a month" "ever since I've been alive and I'm 64 years old . . . ." She testified that she walked on the Right-of-Way and also drove on the Right-of-Way.

Guy Hardin, Defendant's father, testified that he has used the Right-of-Way. He stated: "I know of twice I've traveled it. I took a - - went through there with a Bobcat; I towed a Bobcat back in there and he was doing some work on it. So I went back there twice with that Bobcat with it."

After trial, the Trial Court entered its judgment on May 5, 2016 finding and holding, *inter alia*, that the Right-of-Way "referred to in the parties['] deeds is for the use and benefit of both parties and neither party may block the others['] use or impede the other parties['] use of the property." In its memorandum opinion incorporated into the May 5, 2016 judgment by reference, the Trial Court specifically found and held, *inter alia*:

> For adverse possession, one of the elements is the possession has to be actual and exclusive. In this case, and certainly within the last 20 years prior to the filing of the case, Ms. Bailey travelled the right-of-way, [Defendant] has travelled infrequently on the right-of-way, his father travelled it a couple of times. They have not been blocked within the last

6

20 years and the lane has not been blocked. It has been used to go to [Defendant's] property and onto the W.O. Tittle property.

Next, you also have to prove that, if there was actual and exclusive possession by the Plaintiffs - - and the Court finds that there was not - - it had to have been open, visible, and notorious. Again, the private road was not blocked; it was not occupied in a visible and notorious manner really for any period of time. When there was a utility building set out there, [Defendant] protested and, from the evidence today, the utility building did not block, except for maybe a short period of time, his access to his property.

Third, without having the open and notorious occupation or actual and exclusive use of the property, it cannot have been continuous and it certainly was not hostile and adverse. Without those elements that have to be proven by clear and convincing evidence, which just simply did not occur in this case - - the lane has remained open.

* * *

Plaintiff, Mr. Osborne, was certainly truthful in his testimony, he was forthcoming about it, that there simply has not been any adverse control of this property blocking access at any time and the property has been used by either [Defendant] or his predecessors-in-title at least back to the 1960s, if not farther, to have access to this property. And, accordingly, the Court finds that the Plaintiff has failed to prove by clear and convincing evidence adverse possession and the complaint for such is dismissed.

Plaintiffs filed a motion to alter or amend or for a new trial, which the Trial Court denied by order entered November 18, 2016. Plaintiffs appeal to this Court.

### Discussion

Although not stated exactly as such, Plaintiffs raise three issues on appeal: 1) whether the Trial Court erred in setting aside the judgment by default; 2) whether the Trial Court erred in proceeding with trial in the absence of Plaintiffs Margaret Howell and Kathy Street; and, 3) whether the Trial Court erred in finding that Plaintiffs had failed to prove adverse possession.

We first consider whether the Trial Court erred in setting aside the judgment by default pursuant to Tenn. R. Civ. P. 55.02 and Tenn. R. Civ. P. 60.02. As pertinent,

Tenn. R. Civ. P. 55.02 provides that "[f]or good cause shown the court may set aside a judgment by default in accordance with Rule 60.02." Tenn. R. Civ. P. 55.02. We review a trial court's decision with regard to Tenn. R. Civ. P. 60.02 motions for abuse of discretion. *Ferguson v. Brown*, 291 S.W.3d 381, 386 (Tenn. Ct. App. 2008). In pertinent part, Tenn. R. Civ. P. 60.02 provides:

> **60.02. Mistakes – Inadvertence – Excusable Neglect – Fraud, etc. –**
> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; . . . (5) any other reason justifying relief from the operation of the judgment. . . .

Tenn. R. Civ. P. 60.02.

With regard to whether the Trial Court erred in setting aside the judgment by default pursuant to Tenn. R. Civ. P. 60.02, we note that "while the consideration of a motion to set aside a judgment by default requires the exercise of the trial court's sound discretion, the law favors the granting of the motion." *Patterson v. Suntrust Bank*, 328 S.W.3d 505, 511 (Tenn. Ct. App. 2010).

Our Supreme Court discussed the abuse of discretion standard in *Eldridge v. Eldridge*, stating:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made." A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted).

Appellate courts ordinarily permit discretionary decisions to stand when reasonable judicial minds can differ concerning their soundness. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999). A trial court's discretionary decision must take into account applicable law and be consistent with the facts before the court. *Id*. When reviewing a discretionary decision by the trial court, the "appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision." *Id.*

8

In its December 8, 2015 order setting aside the judgment by default, the Trial Court found, *inter alia*, that "[Defendant] operated without the benefit of legal counsel, but his actions reveal to this Court that he had no intention of willfully allowing a judgment to go against him without attempting to defend himself. He did not ignore the notice to come to court; he was here." The Trial Court found that Defendant did not attempt to avoid or ignore Plaintiffs' complaint, but instead appeared in court prepared to defend against the underlying claim. The Trial Court further found that Defendant "has asserted what may be a meritorious defense and the record is not persuasive that Plaintiffs will suffer prejudice if the default judgment is set aside." In the December 8, 2015 order, the Trial Court held that Defendant's "inadvertence in not answering the complaint was excusable because he did come to court when he thought he had an opportunity to address the merits of the matter . . . ."

Reasonable minds could disagree as to the propriety of the Trial Court's decision to set aside the judgment by default, which is the very essence of a discretionary decision. Given the record now before us, we find no abuse of discretion by the Trial Court in setting aside the judgment by default.

With regard to the remaining issues, our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We next consider whether the Trial Court erred in proceeding with trial in the absence of Plaintiffs Margaret Howell and Kathy Street. In their brief on appeal, Plaintiffs state that plaintiffs Margaret Howell and Kathy Street were not present at trial and that had they been, their testimony would have countered the testimony of witness Kathy Bailey. Plaintiffs allege that they filed a motion to alter or amend or for a new trial supported by affidavits with some explanation about why these parties did not appear at trial. Unfortunately, said motion to alter or amend or for a new trial does not appear in the record on appeal.

What does appear in the record on appeal is the Trial Court's order entered on November 18, 2016 after the hearing on the motion to alter or amend or for a new trial. In pertinent part, the November 18, 2016 order provides:

> 1. After setting aside the default judgment granted earlier, an answer was filed and the above styled cause was set for trial on March 10, 2016.

2. The trial date was later continued until April 8, 2016.

3. The order of continuance carried the signature of counsel for plaintiffs.

4. Although two of the plaintiffs were not present, the court must presume that the parties know, when acting through counsel, of their trial date.

5. It was not brought to the attention of the court that there was a reason why the court should continue the case.

6. There was no motion made for a continuance for whatever reason; the parties indicated to the court that they were ready to proceed and a trial was held.

7. Plaintiffs have offered nothing that was not available to them to be presented on the day of trial and for the foregoing and for the reasons set forth in the court[']s opinion from the bench which is appended hereto as Exhibit A and incorporated herein by reference, the motion should be denied.

Thus, it is clear from the record now before us that neither party requested a continuance when the trial began on April 8, 2016.[1] In fact, the parties indicated to the Trial Court that they were ready to proceed with trial on that date, and the trial did so proceed.

Rule 36 of the Tennessee Rules of Appellate Procedure provides, in pertinent part: "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). If it was error to proceed with the trial in the absence of Plaintiffs Margaret Howell and Kathy Street, and we make no assertion about whether it was error to do so as such a determination is unnecessary to our resolution of this issue, Plaintiffs led the Trial Court into this error by failing to move for a continuance, failing to point the alleged error out to the Trial Court until after the trial, and indicating to the Trial Court that Plaintiffs were ready to proceed with trial. Plaintiffs took no steps whatsoever to prevent or to nullify the potentially harmful effect of the alleged error. As such, Plaintiffs are entitled to no relief with regard to this issue.

Finally, we consider whether the Trial Court erred in finding that Plaintiffs had failed to prove adverse possession. Our Supreme Court has explained the doctrine of adverse possession stating:

> The doctrine of adverse possession is often described as a limitation on the recovery of real property; the limitation period may operate not only as a bar to recover adversely possessed property but it may also vest the

---

[1] The record shows that Plaintiffs were represented by another attorney at trial and not their current attorney. Plaintiffs' current attorney filed the motion to alter or amend or for new trial.

adverse holder with title. Ralph E. Boyer, *Survey of the Law of Property* 233, 236 (3d ed.1981). Generally, acquisition by adverse possession for the requisite period of time, whether statutory or under common law, must be (a) actual and exclusive; (b) open, visible, and notorious; (c) continuous and peaceable; and (d) hostile and adverse. *Id.* The adverse possession of real estate is not only inconsistent with the right of the title holder but may, when all elements of the doctrine are present, create an actual ownership interest. 10 *Thompson on Real Property* § 87.01, at 73–74 (David A. Thomas ed., 1994).

\* \* \*

In our state, common law adverse possession rests upon the proposition "that, where one has remained in uninterrupted and continuous possession of land for 20 years, a grant or deed will be presumed." *Ferguson v. Prince*, 136 Tenn. 543, 190 S.W. 548, 552 (Tenn. 1916); *see also Webb v. Harris*, 44 Tenn. App. 492, 315 S.W.2d 274, 277 (Tenn. Ct. App. 1958). Color (or assurance) of title is not required. *Keel v. Sutton*, 142 Tenn. 341, 219 S.W. 351, 352–53 (Tenn. 1920); *Hallmark v. Tidwell*, 849 S.W.2d 787, 792–93 (Tenn. Ct. App. 1992). In order to establish adverse possession under this theory, or in any statutorily based claim, the possession must have been exclusive, actual, adverse, continuous, open, and notorious for the requisite period of time. *Hightower v. Pendergrass*, 662 S.W.2d 932, 935 n.2 (Tenn. 1983); *cf. Menefee v. Davidson County*, 195 Tenn. 547, 260 S.W.2d 283, 285 (Tenn. 1953). Adverse possession is, of course, a question of fact. *Wilson v. Price*, 195 S.W.3d 661, 666 (Tenn. Ct. App. 2005). The burden of proof is on the individual claiming ownership by adverse possession and the quality of the evidence must be clear and convincing. *O'Brien v. Waggoner*, 20 Tenn. App. 145, 96 S.W.2d 170, 176 (Tenn. Ct. App. 1936). The actual owner must either have knowledge of the adverse possession, or the possession must be so open and notorious to imply a presumption of that fact. *Kirkman v. Brown*, 93 Tenn. 476, 27 S.W. 709, 710 (Tenn. 1894). When an adverse possessor holds the land for a period of twenty years, even absent any assurance or color of title, the title vests in that possessor. *Cooke v. Smith*, 721 S.W.2d 251, 255–56 (Tenn. Ct. App. 1986).

*Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 375-77 (Tenn. 2007).

In the case now before us, the Trial Court found that Plaintiffs failed to prove any of the elements of adverse possession as to the Right-of-Way. Specifically, the Trial

Court found that Plaintiffs had failed to prove actual and exclusive possession because the proof showed that Defendant and others had used the Right-of-Way. The Trial Court further found that Plaintiffs' alleged use of the Right-of-Way did not constitute open, visible, and notorious use, in part because the Right-of-Way never was blocked. Further, the Trial Court found that Plaintiffs' use of the Right-of-Way was not hostile and adverse to Defendant.

Although the proof in the record on appeal shows that Plaintiffs use the Right-of-Way, the proof also shows that Defendant and others also use the Right-of-Way. Plaintiffs never took any steps to prevent or hinder Defendant and others from using the Right-of-Way. The proof in the record on appeal shows that although the Right-of-Way was partially blocked for a short period of time by a building, it never was completely blocked, and Defendant still could get in and out. The proof in the record on appeal does not preponderate against any of the Trial Court's findings and its ultimate conclusion that Plaintiffs failed to prove that they adversely possessed the Right-of-Way.

In their brief on appeal, Plaintiffs argue that the Trial Court erred in relying heavily upon the testimony of Kathy Bailey concerning her use of the Right-of-Way. The evidence in the record on appeal, however, shows that even if Ms. Baily's testimony were entirely discounted, which we find no reason to do, Plaintiffs simply failed to prove that their use of the Right-of-Way was adverse in any way to Defendant's right and ability to use the Right-of-Way. Finding no error in the Trial Court's May 5, 2016 judgment, we affirm the judgment.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellants, Jack Osborne, Margaret Howell, and Kathy Street, and their surety.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

12